# CASES

IN

# THE SUPREME COURT

## OF ALABAMA.

### DECEMBER TERM, 1875.

## Curry *v.* Woodward.

### *Garnishment.*

1. *Demurrer; overruling of, when appellate court cannot revise.*—The appellate court cannot revise the action of the lower court in overruling a demurrer to a writ of garnishment, when no written demurrer appears in the record.

2. *Garnishment; who may be summoned in same writ.*—A judgment creditor of a corporation may summon, in the same writ, two or more stockholders, who are severally indebted to the defendant corporation, for unpaid stock subscriptions. The fact that two or more stockholders are summoned to answer what they are indebted in the same writ, does not convert the proceedings into a suit against them as joint debtors.

3. *Same; when garnishee cannot claim a discontinuance.*—In such a case, where by leave of the court the garnishment is dismissed as to one of two garnishees, and his name stricken from the process, upon plea by him that the process treated him as joint debtor with the other, when he was separately indebted, and the remaining garnishee excepts and offers to file a written answer, to which the plaintiff objects, and requires an oral answer, which is ordered at the next term, and the cause is continued, from time to time, until the garnishee files his written answer, and is afterwards examined orally, he cannot afterwards object that the garnishment has been discontinued, by the dismissal as to the other party, even if it had that effect, which is not conceded.

4. *Statute of limitations ; when begins to run in favor of stockholder.*—A call must be made, or the company evidently abandon its business, before the statute of limitations begins to run in favor of the stockholder.

5. *Garnishment; what not necessary to uphold against stockholder.*—It is not necessary to subject stockholders of a corporation to garnishment, that it should be at the time engaged in business, or have persons in office as president or directors. Corporations whose charters expire by limitation, or are annulled by forfeiture or other cause, exist as bodies corporate for five years after dissolution, for the purpose of suit, &c., and the failure to elect officers does not dissolve the corporation. Unless an actual dissolution is shown, the corporation is still an "existing corporation," within the meaning of § 2893 of Revised Code.

[Curry v. Woodward.]

6. *Contract between stockholder and company; what can not defeat rights of creditors.*—The unpaid subscription remaining in the hands of a stockholder is a part of the capital, upon which creditors have rights, wherever it may be.   A stipulation in the contract of subscription, that it shall be payable only on the call of the company, is valid as between stockholders, but cannot be permitted to defeat the rights of creditors.

7. *Case distinguished.*—The present case distinguished from *Smith* v. *Huckabee, ante* p. 191.

APPEAL from Circuit Court of Talladega.

Tried before Hon. WM. H. SMITH.

Appellant, Woodward, in 1867 recovered a judgment against the Talladega Insurance Company, and execution being returned "no property found," he obtained process of garnishment against Curry and Lawler, who were stockholders, and owed the company a balance on their subscription to its capital stock.

The record recites that Curry at the fall term, 1870, demurred to the garnishment, and that his demurrer was overruled, but fails to set out the demurrer.

Curry then pleaded in abatement of the writ the misjoinder of Lawler and himself, as garnishees.   To this plea plaintiff demurred, and the court sustained the demurrer.  By leave of the court, plaintiff then amended his process by striking out the name of Lawler, and defendant excepted. Curry then filed his plea of *nul tiel corporation*, and offered to file an answer in writing, to which the plaintiff objected, and required him to answer orally.   The court then ordered that he should answer orally, at the next term of the court, and the case was continued.

No further action was taken, until the spring term, 1873, when Curry was orally examined.   His testimony showed that at the time of the service of the garnishment in this case, he was a stockholder in the "Talladega Insurance Company" to the amount of six thousand dollars, on which he had paid fifty per cent.; that the company had elected officers and had done business, but that at the time of the service of the garnishment he did not know who they were. He stated that these subscriptions to the capital stock were made under a contract with the company that he should pay for the same, at such times and in such amounts as should be called for by the board of directors, and that he had paid the amount which had been thus called for.   He set up the statute of limitations of six years, as a bar to the action, alleging that more than six years had elapsed since the last call for subscriptions to the capital stock, and the service of the garnishment.   Curry also alleged that the defendant corporation, at the time of the issue of the garnishment and

VOL. LIII.

the making of his answer, did not have any legal existence. He filed at the same term a written answer to the garnishment.

Plaintiff then moved the court for a judgment against him for the amount of his unpaid subscription, and a judgment was rendered against him for the sum of twenty-eight hundred and sixty-five dollars, and the rendition of this judgment is now assigned, among other things, as error.

JOHN T. HEFLIN, for appellant.—The law is settled that a judgment should not be rendered against a garnishee, on an answer which does not disclose the existence of a debt, on which the debtor of the plaintiff in garnishment could not maintain an action of debt or *indebitatus assumpsit*. *Godden* v. *Pierson*, 42 Ala. 371, and authorities there cited. Clearly in this case, the defendant corporation itself could not maintain either of said actions. The answer was not excepted to as evasive or insufficient, and must be taken as true; and the court should have discharged the garnishee. *Allerton* v. *Railway Company*, 18 Wallace, 233. The stock of a corporation being a trust fund for the payment of its debts, the trust cannot be administered in a summary way, by a court of law, in a summary proceeding in garnishment. *Smith* v. *Huckabee*, 53 Ala. A garnishment is not purely a legal remedy, but a legal one in the nature of an attachment. *Thomas* v. *Hopper*, 5 Ala. 442; *Pierce* v. *Masterson*, 35 Ala. 483. The discontinuance as to Lawler was a discontinuance of the entire proceeding. 46 Ala. 485.

JOSEPH A. WOODWARD, *contra*.

MANNING, J.—At the return term of the writ of garnishment in this cause, (fall term, 1870,) the garnishee (appellant) it seems from the record, demurred to the writ, and the demurrer was overruled. We cannot say the court erred in this, for no demurrer in writing appears in the record, and we do not know that in conformity with the statute, it *specified* any good cause of demurrer. If it did not, it was properly overruled.

The pleas then filed by appellant were intended to present the issue that appellant Curry and Levi W. Lawler, who were both summoned in and by the same writ of garnishment to answer, as garnishees, what they respectively owed to the Talladega Insurance Company, were *not jointly* indebted to it. If Woodward, the judgment creditor of the Talladega Insurance Company, proceeded against them as

[*Curry v. Woodward.*]

joint debtors to it, to have what they jointly owed to the company paid to him, and they did not jointly owe it anything, appellant, Curry, could obtain whatever advantage he might be entitled to from that fact, by his answer; just as in an ordinary action against two or more upon an alleged joint liability, the action would be defeated by evidence under the general issue, that although one or each was separately indebted to plaintiff, they were not jointly indebted to him.    Even the statute of limitations may be set up by a garnishee in his answer instead of by a special plea.    *Hagen* v. *Emerson*, 9 Pick. 144; *Benton* v. *Lindell*, 10 Mo. 557.

In truth, however, the plaintiff did not proceed against them as joint debtors to the company, but as stockholders who severally are liable for the shares of the capital which they separately contracted to contribute, and for which each received his corresponding certificates of stock, a proceeding which this court has held to be proper in this same case. (50 Ala. 259).    The pleas, therefore, were no answer to the garnishment—and a demurrer to them was properly sustained.

Plaintiff, then, dismissed his garnishment as against Lawler, by having his name, by leave of the court, stricken out of the process; to which Curry excepted.    And this leave of the court is now assigned as error.

The amendment thus made was for the correction of what appellant by his pleas had alleged as an irregularity, and had complained of as such.    We do not perceive upon what ground the exception by him is predicated.    If he could allege anything against the dismissal, as to Lawler, it would be that this was a discontinuance of the action.    But instead of treating it as such, he then offered to file a written answer to the garnishment—which plaintiff objected to receiving, insisting instead, on an answer in open court, upon oral examination, of which he then gave and appellant accepted notice, and which the court ordered should be had at the next term thereof, to which the cause was continued.    The cause being continued from time to time, appellant appeared at the spring term of the court, 1873, and filed his written answer, to which were added his responses in presence of the court upon an oral examination then had; and the whole together was received as his answer to the garnishment.

If the dismissal against Lawler did operate as a discontinuance, which we are not inclined to concede, it is too late for appellant to make that objection now.    *Hair* v. *Moody*, 9 Ala. 399; *Walker* v. *Cuthbert*, 10 Ala. 219; *Steamboat Farmer* v. *McCraw*, 31 Ala. 659.

[Curry v. Woodward.]

In the case of *Curtis* v. *Gaines*, (46 Ala. 487), which is cited to sustain appellant's objection made now, that the cause was discontinued, PECK, C. J., overlooked the fact that the case of *Givens* v. *Robins*, (5 Ala. 676), upon which his opinion was predicated, was in effect overruled by the cases *supra*, and was expressly disapproved in one of them. *Walker* v. *Cuthbert*.

It is insisted that the Talladega Insurance Company was not, when this garnishment was issued, an "existing corporation" within the meaning of § 2893, of the Revised Code, which authorizes the garnishment of stockholders for the payment of crditors of an "existing corporation." It is not necessary to the existence of such an institution, that it should at the time be engaged in business, or have persons in office as president, directors, &c. The law does not say that it must be in operation or be organized. If it did, it would be possible for a corporation largely indebted, and whose stockholders had not paid in their shares of the capital (the large amount of which had been paraded before the public in order to procure custom), to avoid, by a sudden disbandment, the responsibility the statute intended to secure.

It is sufficient if the existence be such as is contemplated in § 1775 of the Revised Code: "All such corporations whose charters expire by their own limitation, or are annulled by forfeiture, or dissolved for any other cause, *exist as bodies corporate* for the term of five years after such dissolution, for the purpose of prosecuting or defending suits, by or against them; settling their business, disposing of their property, and dividing their capital stock," &c. And by section 1774, it is enacted: "A failure to elect officers at the proper time does not dissolve the corporation, but those in office hold until the election or appointment and qualification of their successors." The judgment of plaintiff against the Talladega Insurance Company, out of which this suit springs, was obtained in 1867; and although the company was not engaged in business, and officers of it have not been elected for several years, no actual dissolution is shown. The judgment, therefore, is not on this account invalid.

The statute of limitations is set up—the long delay of more than six years, exclusive of those of the war—since *any call* was made by the company on the stockholders for the portions of the capital subscribed by them respectively, which they were permitted to retain, until called for by the company.

These sums of money in the hands of the corporators were a part of the capital of the company—of the fund with

[Curry v. Woodward.]

which it was to transact business and pay its debts. They were its money held in trust for it, to be paid in when and as it should need and call for it, as much so as if the stockholders had received it from the vaults of the institution upon an express agreement so to hold it. Moreover, they themselves constituted the corporation, elected its officers, and through these controlled and managed its affairs. It was not a thing apart from them, but was composed of them. And a large part of the capital which they thus owned collectively, being held by them distributively, was constantly recognized by them as belonging to the company, and as constituting a part of the large capital, which published to the world, obtained for it credit, custom and profits. In the distribution of the profits, they doubtless received dividends on the portions of the capital thus in their hands, as well as on the rest which was in the company's vaults, or let out at interest upon security.

As long as the company was organized and doing business, these relations between it and the stockholders, and this recognition by them of these moneys as a part of its capital, continued. During this time there was no adversary attitude or claim from which the statute of limitations could begin to run against it. And we presume no one of the stockholders imagined that if the business was prosperous, so that for six, eight, or ten years, instead of having to pay this money in, they were receiving dividends from the income, and if afterwards in consequence of losses by fire or otherwise, it became necessary in order to pay its policies, to raise more money than the company had, he could set up the statute of limitations in opposition to a call to pay in his stock. There would be in such a case, by virtue of their relations and participation in the profits, an acknowledged continuing liability for it to the company. Until the call was made, or there was an evident disbandment of the company and relinquishment of business, the statute of limitations would not begin to run. And it is clear from the answer that the company did not discontinue business long enough, before the garnishment in this cause was served, to enable the statute of limitations to be effectually pleaded in bar of a recovery. *Payne* v. *Bullard*, 23 Miss. 88.

The money in the hands of the stockholders, subscribed but not paid in, being thus a part of the capital of this company, it was its plain duty, when other resources failed, to get it in and pay therewith its creditors. It had authority to collect the money from the stockholders by actions at law.

[Curry v. Woodward.]

If it would not perform these duties the law of course must afford redress.

The proceedings in this cause are taken under section 2893 of the Revised Code. It provides that "a judgment creditor of an existing corporation, whose execution has been returned 'no property,'" making affidavit thereof, and "that a certain person is supposed to be indebted to the corporation as stockholder of the corporation, or otherwise, is entitled to process of garnishment, returnable ·forthwith, if in term time, or to the next term, if in vacation; and such proceedings must thereupon be had as in cases of original attachment." This is an express and plain enactment.

It is insisted, however, that here there is no such indebtedness of Curry, the garnishee, to the Talladega Insurance Company, as is subject to this process of garnishment; because the stock, according to the express contract of subscription, was payable only upon the call of the company, and no call having been made, there was no debt to the company for which it could sue Curry and therefore none liable to the garnishment; and because, further, to coerce payment of it in such a case, would be imposing upon Curry a liability not in pursuance of the terms of the contract, but in violation of them, which the court has not the power to do. It is also contended that the appellee should have sought redress in a court of equity, which would have apportioned the debt among the several stockholders according to their liability respectively to the company, and so as to make the settlement equal and equitable in respect not only to them, but also to the other creditors of the company, if any. And to support this argument the decision in *Smith* v. *Huckabee*, *ante*, p. 191 is cited.

That case was quite different from the present. Smith had no judgment against the company of which before it was dissolved Huckabee had been a member. He had not secured the advantage, which the common law almost always concedes to those who diligently have done all that was in their power, by a regular proceeding to judgment and execution, to obtain what is justly due to them. And of course, also, Smith did not proceed by garnishment against Huckabee under section 2893. Since it is only upon a judgment against a corporation that a stockholder can be garnisheed for his unpaid stock, Smith's suit was an original action at law, supposed to be authorized by section 1760 (1478) of chap. 3, title 2, part 2, of the Revised Code, which we held did not warrant a proceeding in that mode.

In respect to the supposed injustice to the stockholder who

[Curry v. Woodward.]

happens to be garnisheed by requiring him by an action at law, instead of by a suit in equity against all to pay over to a creditor a larger portion than his associates of the capital which they and he respectively subscribed, and in respect to the supposed violation of the contract of subscription, by which they agreed to pay the sums they respectively subscribed when and as calls should be made therefor, we say: The comparative justice of authorizing a proceeding in the mode adopted in this cause, or of restricting a creditor to a suit in equity, is a matter for the consideration of the legislature. The contract of subscription, however, was mainly, and its terms in respect to payment *pari passu* upon calls, entirely an arrangement of the stockholders *inter se*, stipulations among themselves, and as such the courts would enforce them. But the sums they thus agreed to pay were in fact withheld from the company. Those sums were a part of its capital, on the faith of which it did business, and others did business with it. Its creditors had just claims upon these moneys wherever they were, as part of that capital. Perhaps their rights under the general law are as accurately set forth as they could so concisely be, in the act of incorporation of this company. "The said corporation shall be liable to its creditors to the full extent of its property and assets ; and the several stockholders shall be liable to the creditors of the corporation to the extent of their stock subscribed and not paid in." See Acts of 1855-6, pp, 260, 261. And since a corporation is under the control of its stockholders, and the law also enables any one or more of them who may have paid to or for it, a larger proportion of his or their subscribed stock than others have done, to compel them by a suit in equity to take their just share of this *extra* burden, it may have seemed to the legislature not unjust to enable a judgment creditor to obtain what was due to him, by the direct and cheap legal process of garnishment, against one or more, instead of by a dilatory and expensive chancery suit against all. We should be shutting our eyes against the plain meaning of this provision of the Code, in holding that such was not its object. This does not violate *the obligation* of the contract of subscription. The obligation extended beyond the special stipulations between the stockholders, and bound them to apply so much of the capital stock as was necessary—and that they should not by any arrangements hinder it from being applied to the payment of the company's debts. And it was this obligation that the statute law in question was intended to enforce.

The judgment of the circuit court is affirmed.