# Glenn, Trustee, v. Semple.

*Action for Breach of Agreement to pay Stock Subscription.*

1. *Court of equity will enforce assessments when directors fail to perform that duty.*—If the directors of a private corporation, having authority to call in unpaid subscriptions of stock, fail to make the assessments and collections necessary to meet the demands of creditors, a court of equity will take jurisdiction, at the instance of creditors, and enforce the necessary assessments.

2. *When statute of limitation begins to run in favor of stockholders.* When the terms of subscription bind the stockholders to pay the amount subscribed by them respectively, " in such installments as may be called for by said company, and one *per cent.* at the time of subscription;" and the corporation, becoming embarrassed, executes a deed of assignment for the benefit of creditors, not having called in all the stock subscribed; the statute of limitations in favor of the stockholders, as to their unpaid subscriptions, does not begin to run from the date of the assignment, but from the time when, under a bill filed by creditors, a decree is afterwards rendered by a court of equity making an assessment and call for the unpaid subscriptions.

    APPEAL from the Circuit Court of Montgomery.
    Tried before Hon. JAMES E. COBB.
    The opinion states the facts.

    WM. S. THORINGTON, for appellant.

    No counsel of record for appellee.

    SOMERVILLE, J.—The present action is brought for a certain portion of the unpaid subscription to the capital stock of the National Express Company, a body corporate organized under the laws of the State of Virginia. The action is instituted by the plaintiff, as trustee, duly appointed by a court of competent jurisdiction, and fully authorized to sue. No question arises as to the personal disability of the plaintiff to maintain the action, nor is the jurisdiction of this court, which clothed him with his authority to sue, in any wise challenged.

[Glenn, Trustee, v. Semple.]

The only point raised by the record is, whether the action is barred by the statute of limitations of six years, which is the period fixed in this State for commencing actions founded on promises not under seal.

The subscription in question was made by the defendant in the year 1866, by which he agreed to pay to the National Express Company the sum of one thousand dollars "in such installments as *may be called for* by said company, and to pay one *per cent.* at the time of subscription." The company was organized, and carried on business for many months, but becoming financially embarrassed, executed a deed of assignment, in September, 1866, conveying to certain trustees all of its property, including unpaid subscriptions to its capital stock, for the purpose of securing its creditors. In December, 1871, a creditor's bill was filed in the chancery court of Richmond, the proceedings of which show proper jurisdiction of the subject matter and of the parties, praying for the removal of the trustees appointed in the deed of trust, and the substitution of others in their stead; that the liabilities of the company be ascertained, and an assessment be made by authority of the court upon the unpaid capital stock for the purpose of discharging these liabilities. The court assumed jurisdiction of the cause and granted the prayer for relief, the plaintiff, as we have said, being substituted as trustee, and authorized to execute the trust. It being ascertained, further, that there remained uncalled for and unpaid the sum of eighty dollars or eighty *per cent.* on each share, it was ordered and decreed by the court, on December fourteenth, 1880, that thirty *per cent.* of the par value of each share of said stock be assessed and called for, this sum being required to pay the debts of the company.

Under this state of facts, the court below gave the general charge for the defendant, evidently adopting the view contended for by appellee's counsel, that the statute of limitations commenced to run in favor of the stockholders from the date of the execution of the deed of assignment by the company, in the year 1866.

It is insisted, on the contrary, by the appellant's counsel that the statute did not commence to run, by the terms of the subscription, until the assessment and call were made under authority of the Chancery Court; and that the charge of the Circuit Court was, for this reason, erroneous.

We are unable to resist the conviction that the latter view is the correct one, as better supported both by the test of reason and the weight of authority.

It may be regarded as axiomatic that it was the duty of the directors of this corporation, as faithful fiduciary agents, to administer with fidelity the trust which they had assumed.

VOL. LXXX.

[Glenn, Trustee, v. Semple.]

Among the plain duties imposed upon them by law was, to see that the property of the company was honestly appropriated to the payment of its just debts.    The unpaid subscription to stock was a trust fund in their hands pledged for this purpose. They had the lawful authority to make a call for so great a per centage of these subscriptions as was needed to discharge these corporate liabilities, and their duty was commensurate with their power.    This duty, it is made to appear, they neglected to perform.    And in view of such negligence and wilful inaction on their part, it devolved upon a court of equity, on proper application, to afford the requisite relief.    It is a part of the inherent and original jurisdiction of such courts to compel the execution of trusts, and no plainer or more conspicuous illustration of this principle can be found than the frequent cases in modern times, where they have, by a strong arm, coerced the proper application of the assets of insolvent corporations to the satisfaction of their debts.    It is now, accordingly, well settled that courts of equity may enforce the payment of stock subscriptions, where the directors have neglected or refused to make assessments and calls for them in the exercise of their proper fiduciary duty.—*Glenn, Trustee, v. Williams*, 60 Md. 93; *Sawyer v. Upton*, 91 U. S. 56; *Hall v. U. Ins. Co.*, 5 Gill 484; *Hatch v. Dana*, 101 U. S. 205; *Adler v. Milwaukee Bank Co.*, 13 Wis. 61; *Ward v. The Griswoldville Manfg. Co.*, 16 Conn. 593; *The Dalton etc. R. R. Co. v. McDaniel*, 56 Ga. 191.

But we do not understand the existence of this power in a court of equity to be seriously controverted.    The point of contestation relates rather to the legal effect of its actual exercise, after it has been put in operation by a court of competent jurisdiction.

The question as to when the statute of limitations commenced to run depends, in this case, upon a proper construction of the contract of subscription.    The promise of the defendant was to pay in such installments as may be called for by the board of directors of the company—which means in such sums and at such times as they might thereafter declare to be necessary.    After the first assessment had been made and called in, it could not be known that any further call would ever be made.    If the business of the company prospered, no further payments might probably be needed.    But if bad management characterized its operations, or disaster beset it for any reason, such a call would be imperatively required.    The defendant's contract, therefore, was not to pay absolutely or at all events, but upon a contingency—this contingency to be determined by the directors of the company, who were the mere agents of the stockholders, or, in the event of

11

[Glenn, Trustee, v. Semple.]

their neglect or refusal to act, by the decree of a court of chancery.

The settled rule is, that where money is to be paid, or a thing is to be done, upon the happening of a contingency, or uncertain event, no cause of action accrues, and, therefore, no limitation can run until the contingency happens, or the event takes place. The clear reason is, that until then there is no breach of the contract, the obligation of the promise being in the meanwhile suspended.—1 Addison on Contr. §§ 406, 407; Angell on Lim., §§ 113–115; 2 Parsons on Notes & Bills, 639–644.

This rule has been frequently applied by the courts to actions for unpaid subscriptions for stock like the one in hand. In *Glenn, Trustee, v. Williams*, 60 Md. 98, where precisely the same point now before us was under consideration, in a similar action brought by the same plaintiff, it was held by the Court of Appeals of Maryland that the statute of limitations began to run only from the time of the assessment made by the decree of the court in Virginia. It was observed that, after the payment of the first assessment, there was nothing due from the subscribers "until an authorized call was made for the residue." "The contract," said Alvey, J., in his most learned and able opinion, "contemplated the exercise of judgment and discretion on the part of the president and directors as to the times and amounts of future payments on the stock, and there was nothing due from the stockholders until such amounts were determined on, and regularly called for. Until a regular call made, there was no unconditional liability on the part of the stockholder to pay. Until then he could not know when to pay, or how much he would be required to pay. The subscription, therefore, was conditional as to the times and amounts of payments; and, consequently, there was no fixed obligation of the stockholder to pay, and no right of action against him, until an assessment and call made, either by the president and directors, or by the order of a court of competent jurisdiction."

In *Scovill v. Thayer*, 105 U. S. 148, we have a strong authority holding the same view. After announcing the doctrine, that, where the company neglects or refuses to make the call, a court of equity will do so, if the interests of the creditors require, the court said : "But under such circumstances, before there is any obligation upon the stockholder to pay without an assessment and call of the company, there must be some order of a court of competent jurisdiction, or, at the very least, some authorized demand upon him for payment. And it is clear," concludes the court, "the statute of limitations does not begin to run in his favor until such order or demand."

In *Savage v. Medbury*, 19 N. Y. 82, the suit was by the receiver of an insolvent insurance company upon a premium note, payable in such portions and at such times as the directors might require. It was held that no action could be maintained on the note without a previous assessment, agreeable to the terms of the subscription. And this ruling is followed by subsequent cases in that State.—*Howlands v. Edmunds*, 24 N. Y. 307; *Howland v. Cuvendall*, 40 N. Y. 320.

In *Gibson v. Columbia, &c. Bridge Co.*, 18 Ohio St. 396, the suit was on an unpaid subscription to corporate stock made about sixteen years previously. It was held that the cause of action did not accrue, nor, consequently, the statute of limitation commence to run, until a call was made by the company. To the same effect is *Kilbrath v. Gaylord*, 34 Ohio St. 305.

There are a large number of adjudged cases in other States supporting the same principle, to which we refer, merely, without comment.—*Sinkler v. The Turnpike Co.*, 3 Penn. Rep. 149; *Bigelow v. Libby*, 117 Mass. 359; *Macon & Augusta R. R. Co. v. Vason*, 52 Ga. 326; *Hope Mut. Ins. Co. v. Weed*, 28 Conn. 51; *Warner v. Boom*, 86 Iowa, 386; *Western R. R. Co. v. Avery*, 64 N. C. 491.

In *Curry v. Woodward*, 53 Ala. 370, where the effort was to subject an unpaid subscription of stock to the process of garnishment at the instance of a judgment creditor of an insolvent insurance company, the subscription was payable at such times and in such amounts as should be called for by the board of directors. Upon a plea by the defendant that the debt was barred by the statute of limitations, it was said that the statute would not begin to run "until the call was made, *or*, there was an evident disbandment of the company and relinquishment of the business." The next cursory reading of the case shows that this observation was a *dictum* so far as the latter proposition embodied in it is concerned. It was not a point involved in the case, nor was it necessary to be decided. In the present case, however, it is not made to appear that there has been any disbandment of the company in the sense of affecting its corporate integrity or effecting its dissolution. The statutes of the State authorizing its existence seem to preserve its organization until the full liquidation of its liabilities. We can not see that the cessation of business by the company, and the assignment of its assets, can operate, on any just principle, to set in motion the running of the statute of limitations in favor of stockholders. It is true that this state of facts may prove the necessity for calling in unpaid subscriptions for stock in order to liquidate any outstanding corporate liabilities, but in no sense is it tantamount to an actual assessment and call either by the directors or by a court of competent jurisdiction.

The failure of the directors to make such assessment and call is, as we have said, a failure to discharge their duty. They are the agents and representatives of the stockholders, and their dereliction of duty may be justly visited upon their principals. As against the creditors of the company, who have created their debts upon the faith of these subscriptions for stock, the stockholders ought not to be permitted, in our judgment, to take advantage of this wrongful act—this misfeasance of their own constituted agents. The law allows no man to reap a reward from his own wrong any more than it permits him to stipulate for iniquity. The one is as unconscionable as the other. The practical operation of such a principle would be fraught with great evils by affording a patent for the easy extinguishment of corporate debts. All that need be requisite would be the making of a general assignment, and the postponement of suits against stockholders by protracted litigation in chancery for a period of six years. The present case, with its history of expensive litigation in all its varied and numerous forms, extending through so many years, is itself an unanswerable refutation of the proposition contended for by the learned counsel for the appellee.

It is our opinion, that in this case, the statute of limitations did not commence to run in favor of the defendant until the decree of the Chancery Court of the city of Richmond, ordering the assessment and call for thirty *per cent.* of the unpaid subscription for stock, which was on the fourteenth day of December, in the year 1880. This date being less than six years before the bringing of the action, no bar had accrued, and the charge of the court was consequently erroneous.

It may be proper to add in conclusion, that there is a class of cases not to be confounded with the present one, although somewhat analogous to it. Of this class *Hatch v. Dana*, 101 U. S. 205, is an example. There a creditors' bill was filed by a judgment creditor of a corporation seeking to coerce payment out of the unpaid stock subscriptions. It was held that the bill could be maintained although there had been no calls for them by the company, the court treating the debts as due without further demand. But it was observed that this was true only "as between the debtor and the creditor of the corporation," the court of equity in such cases, pursuing its own mode of collection within the limits of doing justice to the debtor. It needs no argument to show that the two classes of cases are easily distinguishable on sound principles.

The judgment is reversed and the cause remanded.