# Harris *et. al.* v. Gateway Land Co. *et al.*

*Bill in Equity by Judgment Creditor to subject the Unpaid Subscriptions of said Corporation to the Payment of its Debts.*

1. *Corporations; right of judgment creditor to·subject unpaid subscriptions to capital stock to payment of its debts.*—The judgment creditor of an insolvent corporation having an execution returned "no. property. found," can maintain a bill in equity to subject the unpaid subscriptions to the capital stock of said corporation, or other equitable assets of the corporation to the payment of its debts.

2. *Same; legal existence can not be assailed collaterally.*—When an association of persons is found in the exercise and use of corporate franchises under color of legal organization, their existence as a corporation can not be inquired into collaterally. The corporation exists *de facto* and is. subject to all the liabilities, duties and responsibilities of a corporation *de jure.*

3. *Same; estoppel by contract with corporation.*—A person, who contracts with a corporation which has the reputation of being a legal corporation and has a *de facto* existence, and is in the actual exercise of corporate franchises and powers, is estopped from denying the legality of the existence of the corporation or inquiring into the irregularities attending its formation, in order to defeat a contract or of avoiding a liability he voluntarily and deliberately incurred; and especially is this true of stockholders seeking to avoid the liability to creditors of the corporation.

4. *Statute of, limitations; applications for subscription to capital stock.*—Where the' subscription to the capital stock of a corporation does not fix the time for the payment of such subscription, nor provides that it is, to be paid when called for by the company, such subscription becomes due and payable at once; and the statute of' limitations in favor of the subscriber as to the unpaid subscription, begins to run from the date of the subscription.

APPEAL from the Chancery Court of Morgan.
Heard before the Hon. WILLIAM H. SIMPSON,
The bill in this case was filed on October 1, 1896,

by the appellants, C. C. Harris and John H. Sheffey, as trustees, against the Gateway Land Company, alleged to be a corporation duly incorporated under the general laws of the State of Alabama, and E. C. Payne and certain named persons alleged to be stockholders in said corporation.

It was averred in the bill that on October 1, 1887, E. C. Gordon, Milton Humes and George E. Crane sold and conveyed to the Gateway Land Company certain lands specifically described in the complaint. That the said Gateway Land Company executed to the complainants its promissory notes for the deferred payments due for the purchase money of said lands and to secure the payment of said notes executed a deed of trust to the complainants as trustees. That said notes were not paid at maturity and on September 19, 1895, complainants, as said trustees, brought suit in the circuit court of Morgan county against the Gateway Land Company upon said note, and in 1895 recovered a judgment for $53,533, besides the costs of suit. That execution was issued on this judgment, was duly returned by the sheriff "no property found." On September 29, 1894, complainants, as the trustees named in said deed of trust, filed their bill to foreclose said deed of trust, and in August, 1895, a decree was rendered foreclosing the same; that the lands conveyed therein were sold under this decree of sale, were reported to and duly confirmed by the court, and a money decree was rendered for the balance due with interest; and that said decree remains due and unpaid. It was further averred in the bill that the Gateway Land Company was duly organized under the general incorporation laws of the State and entered upon and carried on the business for which it was incorporated, and at the time of the filing of the bill was an existing corporation for all the purposes prescribed by the law of its incorporation. That the capital stock of said company was $60,000, divided into 600 shares of the par value of $100, and largely more than 50 per cent of the stock was subscribed for in writing and accepted as provided for by the statutes of the State; that the subscriptions

to the capital stock of said company were payable on the call of the board of directors, and the directors, in the exercise of their duty, made the assessment of $33 1-3 per share against the subscribers, but they failed to make any other or further assessments and to make calls for the payment of the same.

It was further averred in the bill that the lands sold under the decree of foreclosure were substantially all of the property owned by the defendant, except the subscriptions for stock owing to said company by the subscribers thereof to its stock, and that said company was insolvent.

The prayer of the bill was that "a receiver be appointed to take charge of the assets of said company and to proceed at law or in equity, and by attachment or otherwise as he may be advised, to collect said unpaid subscriptions from said above named parties, and that he collect and hold said assets under the orders and directions of this court. Your orators further pray that this court make all necessary calls on said subscribers for said unpaid subscriptions, and to this end make all necessary orders and decrees for enforcing the payment of said unpaid subscriptions. And your orators further pray that said unpaid subscriptions due from each of said subscribers be condemned to the payment and satisfaction of your orators' said debt, and they pray for such other, further and different relief as the facts and equities of the case may require."

After the demurrers to the bill as originally filed were sustained, it was amended. The substance of this amendment is sufficiently shown in the opinion.

E. C. Payne made a motion to dismiss the bill as amended for the want of equity, and also demurred thereto upon many grounds, among which were the following: 1. The complainants have a plain, adequate and complete remedy at law. 2. No necessity for invoking the jurisdiction of a court of equity is found. 3. The facts as averred in the bill did not give the complainants the right to the relief prayed for. 4. The averments of said bill show that the cause of action of the

complainants is barred by the statute of limitations of
six years.

On the submission of the cause upon the motion to
dismiss and the demurrers filed by the defendant Payne,
the court rendered a decree sustaining each of them.
From this decree the complainants appeal, and as-
sign the rendition thereof as error.

HARRIS & EYSTER and HUMES, SHEFFEY & SPEAKE,
for appellants.—The complainants being judgment cred-
itors of a corporation, and executions on said judgment
having been returned no property found, they could
maintain the present bill to enforce the payment by
the stockholders of the defendant corporation of their
unpaid subscriptions to its capital stock.—*Glenn v.
Semple*, 80 Ala. 160; *Washington Bank v. Butchers'
Bank*, 28 Am. St. Rep. 405, notes; *Sawyer v. Upton*,
91 U. S. 56; *Hatch v. Dana*, 101 U. S. 205; *Scovill v.
Thayer*, 105 U. S. 143.

In Wait on Insolvent Corporations, page 575, § 631,
the rule is laid down without qualification that the
statute of limitations begins to run on a subscription for
stock only after a call has been made and is due, and it
seems from numerous authorities, that when the sub-
scription is made payable upon call, that the statute of
limitations never begins to run until the call is made
either by the directors or by a court of equity, and when
the subscription is silent as to when the subscriptions
are payable, they are treated as a trust fund in the
hands of the subscribers for the payments of the debts
of the corporation.—*Lehman, Durr & Co. v. Glenn*, 87
Ala. 618.   A contract to pay subscriptions upon call
is an arrangement purely and entirely between the
stockholders, which the courts would enforce.   Its
creditors have just claims upon this fund as a trust
fund, for the payment of the debts of the corporation,
as it was a part of the capital of the corporation, upon
which they did business, and the stockholders cannot
defeat the collection of this claim by the plea of statute
of limitations, because the directors did not do their duty
in collecting the same.—*Curry v. Woodard*, 53 Ala. 371.

E. W. GODBEY, *contra.*—The statute of limitations applies with full force to unconditional subscriptions for stock not payable on call or other event.—*Glenn v. Semple,* 80 Ala. 159; *Semple v. Glenn,* 91 Ala. 257; *Teague v. Barnett,* 85 Ala. 493; *Lake v. Mason,* 16 N. Y. 421; *Canary v. Knowles,* 41 Hun. 542; *Pittsburgh v. Byers,* 35 Pa. St. 22; *Conklin v. Freeman,* 48 N. Y. 527; *First Nat. Bank v. Green,* 64 Iowa 445; *Peak v. Ashurst,* 108 Ala. 429; Waite on Insolvent Corporations, 515; *Massie v. Byrd,* 87 Ala. 672.

The delay of the appellants (creditors) in foreclosing their mortgage, or suing the corporation, until the selling price of the mortgaged property had fallen from $50,000 to $1,000, and nearly all of the stockholders had died or become insolvents and non-residents, rendered the creditors guilty of laches.—*Willard v. Wood,* 17 Sup. Ct. Rep. 176; *Alsop v. Ricker,* 155 U. S. 448; *T. H. & W. Co. v. W. & M. M. Co.,* 159 U. S. 423; Thompson on Corporations, § 3773; *Wilson v. S. & W. R. Co.* (Mo.) 25 S. W. Rep. 527; *Gilman v. Bank,* 8 Ohio 62; *Gorce v. Clements,* 94 Ala. 337, 344; *Gilmer v. Morris,* 80 Ala. 78; *Wolf v. G. F. & W. & S. Co.,* 1 Am. Dec. 154.

Exhibit AAA filed as the amendment of June 30, 1897, as the subscription contract does not refer to any subscriptions, and contains not even a remote suggestion of a promise to either take or pay for stock. *Belfast, etc., v. Mooney,* 60 Maine 56; *Strasburg R. Co. v. Echter,* 21 Pa. St. 220; *Jackson v. Troer,* 52 Am. Rep. 456; Cook on Stockholders, § 73.

The payment of the initial assessment, and participation in the preliminary meeting (which participation is not shown on the part of Payne) are not sufficient to estop Payne to dispute the organization of the corporation.—*Schloss v. M. T. Co.,* 87 Ala. 414; *Hedge, etc., Appeal,* 63 Pa. St. 273; *Rikoff v. Brown,* 68 Ind. 388; *Hudson v. Tower,* 32 Am. St. Rep. 434; *Garling v. Baechtel,* 7 Am. Corp. Rep. 345; Cook on Stockholders, (1st ed.), §§ 176, 181; *Indianapolis, etc., Co. v. Herkimer,* 46 Ind. 142; *First Nat. Bank v. Mining Co.,* 18 Am.

St. Rep. 637; *Union Savings Assn. v. Seligman*, 1 Am. St. Rep. 776; *Haskell v. Worthington*, 7 S. W. Rep. 481.

HARALSON, J.—1. The Code, section 823, provides, that "A judgment creditor of a corporation having an execution returned 'no property found,' may, by bill in equity subject to the payment of his judgment, the unpaid subscription of one or more stockholders in such corporation, without joining the other stockholders, and without regard to whether the corporation has called for such subscription, or could maintain suit therefor against the stockholder." The act of which this section is a codification was approved 18th February, 1895.

This case, without reference to special defenses set up against its equity, is similar in general respects to other cases where bills of this character were upheld against demurrer which questioned their equity.—*Hall & Farley v. Henderson*, 114 Ala. 601; *Roman v. Dimmick*, 115 Ala. 233.

2. Although the grounds of demurrer are multiplied at very great length, as to the legal organization of the company, yet when reduced to the real defense intended to be set up, in this respect of the case, there are but two grounds, out of which the others grow. First, it is seriously insisted, that the charter of this company was irregularly and illegally procured, and for that reason, the subscriptions of stock, if made, are not binding on the stockholders, and cannot be condemned to the payment of complainants' debt against the corporation. This question, however, is not an open one in this State, and ought to be regarded as finally settled.

In *Bibb v. Hall & Farley*, 101 Ala. 79, 96, we quoted and approved what had theretofore been so correctly and aptly said in the case of the *Cent. Agr. & Mech. Asso. v. Ala. Gold Life Ins. Co.*, 70 Ala. 120, that "When an association of persons is found in the exercise and user of corporate franchises, under color of legal organization, their existence as a corporation cannot be inquired

42

into collaterally. In a direct proceeding by the government they may be ousted. * * * The corporation exists *de facto*,—subject to all the liabilities, duties and responsibilities of a corporation *de jure*. It would produce only disorder and confusion, embarrass and endanger the rights and interests of all dealing with the association, if the legality of its existence could be drawn in question in every suit to which it was a party, or in which rights were involved, springing out of the corporate existence. No judgment could be rendered which would settle the question finally. But, when the government intervenes by an appropriate proceeding, the judgment is final and conclusive, putting an end to all controversy." It was further said in the same case: "Whoever contracts with a corporation, in the actual exercise of corporate powers and franchises, is estopped from denying the legality of the existence of the corporation, or inquiring into irregularities attending its formation, to defeat the contract, or to avoid the liability he has voluntarily and deliberately incurred. The principle is especially applicable to stockholders, seeking to avoid a liability to creditors of a corporation. Their own acts vitalized the corporation, gave it credit, invited and induced dealings with it, and it is true conservatism and sound policy, promotive of right and equity, to seal their lips against contradiction and denial of that which they must be taken to have affirmed to the injury of strangers, who must have trusted the affirmation."—*McDonnel v. Ala. Gold Life Ins. Co.*, 85 Ala. 401; *National C. B. v. McDonnel*, 92 Ala. 387.

The bill avers as to this matter, that "Said corporation was organized and incorporated under the general incorporation laws of the State of Alabama as found in the Code of 1886, * * * by proceedings therefor in the probate court of Morgan county, Ala., in which county it was proposed said corporation should have its principal place of business, and thereupon, at a meeting of its stockholders, called for that purpose, elected a board of directors and entered upon the business contemplated and authorized by its charter, said stockholders participating therein."

3.  The other ground of defense is, that complainants' cause of action is barred by the statute of limitations of six years, and by their own *laches* in asserting their remedy.    The bill, as first presented, avers that the subscriptions were payable on the call of the directors, and that they have failed to make the calls for these unpaid balances on subscriptions.    No principle is better settled, than that courts of equity may enforce the payment of stock subscriptions, when the directors have neglected or refused to make the assessments and calls for them in the exercise of their plain duty to do so.—*Glenn, Trustee, v. Semple*, 80 Ala. 159; *Curry v. Woodward*, 53 Ala. 371; *Sanger v. Upton*, 91 U. S. 56; *Hatch v. Dana*, 101 U. S. 201.    It seems also to be generally well settled and understood, that the statute of limitations does not begin to run in an action against a stockholder of an insolvent corporation in the hands of a receiver, to recover unpaid assessments on his stock until after a call has been made by the directors; or, if they fail to make the call, not until after the court orders the assessment to be made.—*Scovell v. Thayer*, 105 U. S. 143, 155; *Glenn v. Marbury*, 145 U. S. 499; *Glenn v. Semple*, 80 Ala. 159; s. c. 91 Ala. 245; *Teague v. LeGrand*, 85 Ala. 493; *Lehman v. Glenn*, 87 Ala. 618; *Rockaway v. Gadsden M. L. Co.*, 102 Ala. 623; Cook on Stocks and Stockholders, § 195, and authorities under n. 1.    But, pressed by objections to the sufficiency of the bill in its general averments that the subscriptions were payable on the call of the directors, and that they had failed to make the calls for the unpaid balances on their subscriptions, the complainants, on the 30th of June, 1897, amended their bill, in the manner to be presently more particularly noticed, by which amendment, it is claimed there were really no subscriptions owing by defendants which were subject to be called by the board of directors, and, therefore, that the foregoing principles as to the beginning of the statute of limitations to run not until after a call has been made by the company for unpaid subscriptions, has no application to the case.    In paragraph four of the original bill, complainants had averred, that the

Gateway Land Company was insolvent and unable to pay its indebtedness, and that the defendants, E. C. Payne (and others whose names are mentioned) were indebted to said company in the amounts set opposite their names *for balance due on subscriptions* of stock made by them to said company, on or about the 27th day of September, 1887. (Here the balances due by each subscriber is given.) It is further averred, that "said subscribers paid one-third of their subscriptions soon after they were made, in cash, but have made no payments since, and no calls have been made by the directors or managing officers of said company for the payment of the *balance due* on said subscriptions." The italicizing above is ours. The amendment above referred to is as follows: "By adding at the end of paragraph four, the following allegation, viz.: Said subscription for said stock was in writing, signed by said subscribers above named, and a copy thereof is herewith filed marked Exhibit AAA, and prayed to be considered a part of this bill of complaint." Said exhibit is as follows: "The State of Alabama, Morgan County. Be it known, that P. H. Flynn [and others whose names are mentioned], being desirous of forming an association for the purpose of dealing in and improving real estate in Morgan county, Alabama, do hereby declare in writing as follows, to-wit: 1. That the name of the company we propose to organize is, and shall be 'Gateway Land Company.' That the object for which it is founded is to buy, sell, lease, improve and generally deal in real estate in Morgan county, Alabama, with the power to lease property from other parties, to sublet the same, to lease its own property, and to buy and sell such personal property as may be necessary in improving its own property, or that which it may lease. 2. That the capital stock of such company is sixty thousand dollars, divided into six hundred shares of the par value of one hundred dollars each. 3. That the name of shareholders, and the number of shares held by each are as follows, to-wit." (Then follows the names and shares of each.) "Witness our hands and seals, the 23rd day.

of September, A. D., 1887." This paper was filed in the office of the judge of probate, on the 28th September, 1887, and recorded therein.

The document on its face appears to be nothing more than a preliminary declaration of the persons proposing to form a corporation under the general incorporation statute (Code, 1886, §§ 1659 *et seq.*) ; and yet, the complainants, by their amendments of the bill above referred to, state the mode and manner, and set out the paper writing, by which said parties became subscribers to the stock of said company. They say, "Said subscription for said stock was in writing signed by said subscribers above named," and they exhibit what they own to be the written subscription, as we have set it out above. This paper must be held, therefore, under the averments of the bill, to be the only subscription to the stock of said company ever made by the parties to it. There are other averments in the bill, stated by way of conclusion, that the subscriptions were payable on the call of the board of directors, and such calls were never made, but such averments are accompanied by the so-called written subscriptions, and are to be taken as the conclusions of the pleader in construction of said writing, upon which the complainants rely to show the contract of subscription. If this paper by itself had been set out to show the subscriptions and how they were to be paid, it could not be contended that they were payable on call of the board of directors. There is nothing in it limiting the payments of stock to a call, or other contingency. Since the complainants have set up this document as the written evidence on which they rely to show that the subscriptions were payable on call, they are bound by it; and the instrument itself, thus set up as the highest and best evidence of the subscriptions and how they were payable, must control. It contradicts and nullifies the other averments in construction of the writing, that the subscriptions were payable on call. On its face, this writing appears, as we have said, to be no more than the declaration authorized by statute to be filed in the office of the judge of probate, preliminary to the organization of

the company, and to that end for the issuance by the judge of probate "to two or more of the subscribers to the declaration (of) a commission, authorizing them, as commissioners, to open books of subscription to the capital stock of the corporation."—Code, 1886, §§ 1660, 1661, 1662. The subscriptions proper are provided to be in a book opened for the purpose, to be made payable as specified in the sections last referred to. This declaration exhibited to the bill, cannot be said to be the book of subscriptions and the subscriptions themselves, such as are provided for in these statutes. It follows, that this being the only subscription ever made by defendants, it imports, without more, no obligation on them, to pay at the call of the directors. If it imported any obligation to pay at all, it was to pay presently. We do not decide, however, that the paper by itself created any obligation of the parties signing it, to pay in any event. From what we have said, it follows that the complainants, if they ever had a right to maintain the bill for the alleged subscriptions of stock, were long barred of their right to maintain it, before the commencement of this suit. The demurrer to the bill was properly sustained.

Affirmed.