MORRIS *et al. v.* GEORGIA CASUALTY COMPANY *et al.;*
*et vice versa.*

Where a contract of subscription to the capital stock of a corporation does
not fix the time for payment of such subscription, nor provide that it
is to be paid when called for by the corporation, and the stock has been
fully subscribed and the corporation is a going concern, such subscrip-
tion becomes due and payable at once; and the statute of limitations
as to actions on unpaid subscriptions begins to run from their dates.
A demurrer to a suit on such contract not under seal, where the suit
was begun more than six years from the date of the contract, on the
ground that the action was barred by limitation, was properly sus-
tained.

Nos. 626, 627.   April 11, 1918.   Rehearing denied May 17, 1918.

Equitable petition. Before Judge Mathews. Bibb superior
court. August 27, 1917.

The petition, filed on September 9, 1916, shows the following:
The plaintiffs, Morris and Barrow, are and have been for six
years the owners of six and twenty-seven shares respectively of the
capital stock of Georgia Casualty Company, formerly Georgia Life
Insurance Company. They bring suit against W. E. Small et al.,
for $499,100, on account of their contract of subscription, exe-
cuted in May 1909, to the capital stock of the company, 4991
shares of which are unpaid for; the contract, omitting the signa-
tures, being as follows: "We, the present stockholders of the
Georgia Life Insurance Company, hereby subscribe for the re-
maining shares of the 10,000 proposed, namely 8871, at par; and
we agree that said stock be sold from time to time, at such prices
as the directors of said company may see fit. The net proceeds
arising from the sale of said stock to be property of said Georgia
Life Insurance Company, and to be credited on our stock account."
The defendants were the original promoters of the company. W. E.
Small has been the leading spirit and the president and chairman
of the board of directors since organization, and others of the de-
fendants have been officers and directors of the company for vari-
ous lengths of time. Since its organization the defendants have
voted the 4991 shares of stock referred to. The several boards of
directors of the company have been cognizant of the indebtedness
of defendants, but through collusion with them have refrained
from attempting on behalf of the corporation to enforce or collect
the same, in violation of their official duties to the corporation

and to petitioners and other stockholders. During May, 1914, at a called meeting of the stockholders, under the guise of legitimately reducing the capital stock, a resolution was carried, unconditionally releasing the defendants from liability on this contract, and providing that the stock should be retired and canceled; which action was ratified by the board of directors. The defendants would not have been enabled to carry this resolution but for their ability to vote stock purchased under the above contract, and not paid for. This action was illegal, fraudulent, ultra vires, a mere nullity, and violative of the rights of petitioners and others similarly situated. The notice calling the meeting did not put petitioners on notice of any purpose to pass such a resolution. Morris did not have knowledge of its passage until the latter part of 1915, and Barrow not until the spring of 1916, when they immediately employed counsel to bring this action. Prior to the movement to change the name of the corporation and reduce the capital the stock was worth $125 per share; and the direct result of the illegal action complained of has been to reduce the value of the stock to $40 per share and to cause the loss to the corporation of the subscription, which was an asset of the value of $499,100. Said cancellation effected an inequitable reduction of the capital stock, and worked gross inequality between the stockholders liable under the contract and other stockholders, including petitioners. Several of the members of the board of directors, by their action in favoring the release of the defendants from liability under said contract, demonstrated their antagonistic attitude toward the bringing of such an action; because of the domination and control of "the defendant" over other members of the board, eleven, and perhaps thirteen, of the fifteen members would be antagonistic toward the bringing of such an action; the defendants also control a majority of the outstanding stock; and therefore it would not only be unreasonable to require petitioners to demand that the board of directors institute the action, but it would manifestly be unjust, illegal, and inequitable for them to be allowed to bring and prosecute same, as it would enable the defendants. through their domination of the board of directors, to control the defense as well as the prosecution. The prayers are, for process: that the corporation be made a defendant: that the action of the majority stockholders and board of directors be de-

creed to be ultra vires, illegal, and void; for judgment against the defendants for the full amount of their indebtedness under the contract, in favor of petitioners in the capacity in which they sue; that the court direct disposition of the fund; and for such other and further relief as they may be entitled to.

The petition was dismissed upon general demurrer, and the plaintiffs excepted.

*A. L. Dasher Jr., C. H. Garrett,* and *Ryals & Anderson,* for plaintiffs.

*Hardeman, Jones, Park & Johnston, Hall & Grice, Roy W. Moore, W. B. Birch,* and *Miller & Jones,* for defendants.

GILBERT, J. The entire case is controlled by one question of law: When did the statute of limitations begin to run as to the contract of stock subscription which is the basis of the suit? According to the view of this question which we entertain, the court properly dismissed the petition; and since the suit could not proceed to collect the subscription price of the stock, it could not, under any view of the case, benefit the plaintiffs to continue the suit as to matters contained in the other prayers of the petition. The law in regard to the question just stated is by no means uniform in the various States, but perhaps in most of them the rule is that the statute of limitations does not begin to run until a demand or call is made upon the subscriber for payment of the stock subscription. In this State, however, the question is not an open one. It has been settled in the case of *Georgia Mfg. &c. Co. v. Amis,* 53 *Ga.* 228, cited in *Weed* v. *Gainesville &c. R. Co.,* 119 *Ga.* 576, 592 (46 S. E. 885). In the case in 53 *Ga.* the subscription contract was very similar to the one before us, and was as follows: "Georgia, Coweta County: We whose names are hereto subscribed promise to pay the Georgia Mfg. & Paper Mill Co. the amount placed opposite our names respectively, for stock in said company at the rate of $100 per share, par value." Recovery on this contract was sought in a cross-action. On the trial of the case the court charged the jury, in substance, that the statute of limitations began to run on the subscription contract from the time of its execution; and that if they found, under the evidence, that six years had elapsed since that date, recovery on the contract would be barred by the statute of limitations. This charge was excepted to; and on review the Supreme Court, Warner, Chief Justice, de-

livering the opinion, said that the charge complained of was not error, and that the right of action was barred at the expiration of six years from the date of the contract. The same view of the question has been taken by the Supreme Court of Alabama. Harris v. Gateway Land Co., 128 Ala. 652 (29 So. 611). The rule in this State is that where a contract of subscription to the capital stock of a corporation does not fix the time for payment of such subscription, nor provide that it is to be paid when called for by the corporation, and the stock has been fully subscribed and the corporation is a going concern, such subscription becomes due and payable at once; and the statute of limitations as to actions on unpaid subscriptions begins to run from their dates. The contract having been executed in May, 1909, not under seal, and this suit having been filed in September, 1916, it is obvious that a recovery on the contract can not be had, since more than six years had elapsed between the execution of the contract and the filing of the suit. There were several demurrers containing numerous grounds, among them, the grounds of general demurrer that the petition set out no cause of action, and that the suit was barred by the statute of limitations. The court ruled upon numerous grounds of the special demurrer, and finally ordered the suit dismissed. The dismissal of the suit must be affirmed, because, in our opinion, the bar of the statute settled the entire matter.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concur, except Fish, C. J., absent.*