# Lehman, Durr & Co. *v.* Glenn.

*Action by Trustee under appointment of Foreign Chancery Court, against Subscriber for Stock in Private Corporation.*

1. *Foreign chancery decree as evidence.*—A transcript, duly certified, of a decree rendered by the Chancery Court of Richmond, Virginia, under a bill filed by or on behalf of the creditors of a dissolved corporation, in which a trustee was appointed to act instead of the trustees named in a deed of assignment executed by the corporation, and authorized to collect unpaid subscriptions for stock, with other debts, is admissible as evidence against a stockholder in Alabama, in a suit brought against him by the trustee, if the court had jurisdiction of the subject-matter and the parties, and if the stockholders are to be regarded as parties; the decree being entitled, under constitutional provisions, to as full faith and credit here as in Virginia.

2. *Same; service on corporation.*—The record in that case showing that process was served on the cashier and two directors of the corporation, two of whom appeared and answered, and that the court held this service sufficient to give jurisdiction over the corporation; the decree rendered is conclusive as to that fact, and it can not be here collaterally assailed.

3. *Same; conclusiveness on stockholders as parties.*—The corporation being properly brought in as a party to the foreign suit, the decree rendered is equally conclusive against it and the stockholders, so far as it affects the condition and *status* of the corporate assets, although the stockholders were not personally served with process; and the decree itself is conclusive as to this.

4. *Same; laches, and statute of limitations, as defenses to that suit; authority of court to make calls on stockholders; legal identity of corporations; right of trustee to sue.*—Said foreign chancery decree conclusively establishes, also, (1) that there was no *laches* on the part of said corporation, or its trustees, in the prosecution of that suit; (2) that the claims of creditors were not then barred by the statute of limitations; (3) that the court had authority to make calls or assessments on stockholders for their unpaid subscriptions, the directors having failed to make the necessary calls; (4) the legal identity of the two corporations under a change of name; and (5) the right of the trustee to maintain an action against a stockholder, on such unpaid call.

5. *Books of corporation, as evidence against stockholders.*—The books of a private corporation, showing subscriptions for stock, payments on calls, &c., are admissible as evidence against a stockholder, in an action to enforce his unpaid subscription as called for, especially when he does not by plea deny the genuineness of his subscription.

6. *Statute of limitations in favor of stockholders, as against corporation or creditors.*—When the terms of subscription bind the stockholders of a private corporation to pay the amounts subscribed by them respectively, "in such installments as may be called for by said company," in addition to a small sum in cash at the time of subscription; and the corporation, becoming embarrassed, executes a deed of assignment for the benefit of its creditors, not having called in all the stock subscribed;

[Lehman, Durr & Co. v. Glenn.]

the statute of limitations in favor of the stockholders, as to their unpaid subscriptions, against a trustee appointed and authorized by a court of equity to collect them, begins to run, not from the date of the assignment, but from the time when the court makes an assessment and call for them.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by John Glenn, suing as trustee under appointment by the Chancery Court of the city of Richmond, Virginia, against the partners composing the firm of Lehman, Durr & Co.; was commenced on the 19th November, 1886, and sought to compel the payment of the defendants' unpaid subscription for stock in the National Express Company (or National Express and Transportation Company, its amended name), a corporation chartered under the laws of Virginia; said unpaid subscriptions, amounting to fifty per cent., having been assessed and called for by the decree of said Chancery Court in Virginia, in the suit in which the plaintiff was appointed trustee, and authorized to sue for and collect the unpaid subscriptions for stock. The original complaint contained three special counts, and the common counts were afterwards added by amendment, against the objection and exception of the defendants.

A corporation seems to have been chartered by the legislature of Virginia, in March, 1861, called the "Southern Express Company," but nothing was done under the charter; and the incorporation of another company was attempted in the Fall of 1865, under the name of the "National Express Company;" but, if this company was organized, the fact is not shown by the record, nor is the charter of either of these companies anywhere set out in the record. On the 12th December, 1865, an act was passed by the General Assembly of the State of Virginia, entited "An act to amend and re-enact an act to incorporate the Southern Express Company, passed March 22d, 1861, and to incorporate the National Express and Transportation Company," The defendants subscribed for ten shares, of $100 each, in the stock of the *National Express Company*, the subscription being entitled "Subscription list to the stock of the *National Express Company*: We, the undersigned, hereby subscribe the amount and the number of shares opposite to our names, to the *National Express Company*, and bind ourselves, our heirs, &c., to pay said amount in such installments as may be called for by said company, and to pay one per-cent. at

the time of subscription." The plaintiff sued as trustee, under appointment by the Chancery Court of Richmond, Virginia, under a bill which sought to foreclose a deed of assignment executed by the *National Express and Transportation Company*; the decree of the court in that case having made an assessment on stockholders for their unpaid subscriptions, and authorized plaintiff, as trustee, to collect the amounts by suit or otherwise.

The deed of assignment executed by the corporation, which was dated September 20th, 1866, conveyed all of its property and assets by general words of description, "including office furniture, fixtures, and other effects and moneys payable to the company, whether on calls or assessments on stock of the company, or on notes, bill, accounts, or otherwise," to J. B. Hoge and two other persons as trustees, authorizing them to take possession of the property, to collect all the outstanding debts and demands without any unnecessary delay, to sell the property at private or public sale, and to make distribution of the proceeds among the creditors generally, after the payment of several preferred debts.

On the 28th November, 1871, W. W. Glenn, a judgment creditor of said corporation, filed a bill in equity in the Chancery Court of the city of Richmond, Virginia, on behalf of himself and all other creditors who might come in, against the corporation, its president and directors, and said trustees; asking the court to take jurisdiction of the assignment, to decide as to its validity, legal operation and effect, and to administer its trusts. The bill alleged that only twenty per-cent. of the subscriptions for stock had ever been paid in, or called for; that it was doubtful whether the trustees had power, under the deed of assignment, to enforce the collection of these unpaid subscriptions, and that it was necessary that they should be called in and appropriated as assets in payment of the debts of the corporation; and therefore prayed the appointment of a receiver, or trustee, with authority to collect, under the order of the court, these unpaid subscriptions. Process under this bill was served, November 25th, 1871, on J. R. Anderson, one of the directors of the corporation; and on the 4th December, 1871, on M. G. Harman, another director.

Nothing further appears to have been done in the case, until August 4th, 1879, when an amended and supplemental bill was filed in the name of John W. Wright, as administrator of said Glenn's estate; alleging his death, the ap-

pointment of said Wright as his administrator, the further wasting of the assets of the corporation, the cessation of all business by it, the death of one of the trustees, and other facts showing a necessity for the interposition and assistance of the court. The bill prayed relief as before; also, "that the claims of said W. W. Glenn and other creditors of said company may be established, and decreed to be paid; that said trustees, J. B. Hoge and J. J. Kelly, may be required to deliver up and surrender to this court all of the books of said company, of every kind and description, which came into their hands; that said trustees be removed from office, and, if necessary, another trustee, or other trustees, may be substituted in their place and stead, and the property and estate embraced in said deed of trust be conveyed to such substituted trustees, or to such receiver or receivers as may be appointed by the court," &c. Process on this bill was served, August 8th, 1879, on J. R. Anderson and Lorenzo Nowell, two of the directors, and M. B. Poiteaux, cashier; and the subpœna was returned by the sheriff with this indorsement as to the other defendants: "Executed in the city of Richmond, August 8th, 1879, as to the National Express and Transportation Company, by delivering to Jos. R. Anderson, a director, and M. B. Poiteaux, cashier of the said company, each a copy of the within *spa.* in chancery, each of whom is a resident of said city of Richmond; the president not being a resident of said city. The other defendants are not inhabitants." Publication was thereupon ordered against the non-resident defendants, and on the 6th November, 1879, decrees *pro confesso* were entered against all of the defendants except said Anderson and Poiteaux, each of whom had filed an answer. Anderson in his answer did not admit that he had ever acted as a director, but stated that he had resigned soon after his election, and that he had never attended a meeting of the board of directors. Poiteaux admitted that he had acted as cashier for several months, but was not indebted to the corporation, and did not have possession of any of its money, books, or papers; and he stated that he had never been a stockholder. At the same time, the court also entered an interlocutory decree, ordering an account to be stated by one of the commissioners of the court, of both its debts and its assets.

A decree was rendered in the cause on the 14th December, 1880, accompanied by an opinion, in and by which (1) the report of the commissioner was confirmed; (2) the deed

of assignment was held to be valid, and its legal effect was to vest in the trustees all the property and assets of the corporation, "including the credits allowed by statute and by the said company to its stockholders for the unpaid and uncalled for part of their several subscriptions to its capital stock, and the right to receive and collect the same, according to the terms of the contract of subscription, for the purpose of said trust;" (3) the surviving trustees were removed, on their declaration of inability to execute the trust, and their wish to renounce it; (4) John Glenn was appointed and substituted as trustee in their stead, was "clothed with all the rights and powers, and charged with all the duties of executing said trust, to the same effect as were the original trustees;" and (5) a call of thirty per-cent. was made on stockholders, which the trustee was authorized to receive and collect, by suit or otherwise. The latter part of the decree recites that the money realized from former calls on the stockholders, amounting to twenty per-cent., have been exhausted, and the company has no property or assets available for the payment of the claims of creditors except the subscriptions for stock remaining unpaid, which constitute a trust fund for the payment of debts; that on account of death, removal, insolvency, and other causes, much of said unpaid subscriptions has been lost, and great difficulties encountered in realizing what remains good; that the company has long since ceased and abandoned its business, and there has not been for about fourteen years any meeting of either the stockholders or the board of directors; and that at least thirty per-cent. of said subscriptions is necessary to pay the debts of the company and the costs and expenses of collecting and administering the fund.

On the 11th April, 1884, a petition was filed in the cause by Thomas J. Jennings and others, stockholders and citizens of Georgia, asking to have the decree set aside, and the cause re-heard; alleging and insisting that they were not made parties to the cause, that the corporation was not properly brought before the court, that the claims of creditors were allowed without proof, and that all of them (except Glenn's) were barred by the statute of limitations. On the 27th June, 1884, the cause was transferred to the Circuit Court of Henrico county; and a decree was rendered by that court, on the 4th March, 1885, dismissing the petition, and overruling the several defenses set up in it. In the opinion accompanying this decree, and made part of the decree

[Lehman, Durr & Co. v. Glenn.]

itself by reference, the court held—1st, that process was properly perfected on the corporation; 2d, that the stockholders were not necessary parties to the suit; 3d, that the decree rendered was conclusive on them, "when sued upon in other courts, of this State or any other;" and, 4th, that the claims of creditors were not then barred. Afterwards, on the 26th March, 1886, on the petition of Glenn as trustee, and on the report of the commissioner showing that the debts of the company exceeded the assets, including the thirty per-cent. of subscriptions already called in, nearly $400,000, the court made another decretal order calling in the remaining fifty per-cent. of subscriptions for stock; and this action was brought to recover of the defendants the amount due on their subscription under this last call.

The defendants pleaded the general issue, and several special pleas, which set up *laches*, lapse of time, the statute of limitations, and prescription of twenty years. The second plea alleged that the corporation became insolvent, and ceased to do business in October, 1866, and executed a general assignment of all its property and assets; that plaintiff's cause of action, if any, accrued more than six years before the commencement of this suit; that defendants have never acknowledged or admitted any liability or indebtedness, "wherefore plaintiff's cause of action is barred by *laches* and the statute of limitations of six years." The third plea alleged, in substance, that after said insolvency, cessation of business, and assignment by said corporation, "no call or demand was made on these defendants within a reasonable time, for or on account of any alleged subscription for said stock, for more than six years thereafter before the bringing of this suit," and therefore said demand is barred by *laches* and lapse of time. The fourth alleged that, after the insolvency of the company, and the execution of said assignment, "plaintiff and said company failed to make any demand within a reasonable time, and that no call or demand, for or on account of said alleged subscription, was made upon them for more than six years thereafter, nor did these defendants make any promise to pay said alleged subscription within six years before the bringing of this action; wherefore said demand is barred by *laches*, delay, and the statute of limitations of six years." The sixth plea alleged that said creditors' bill was filed in the Chancery Court at Richmond, Virginia, on the 28th November, 1871, "for the purpose of having said court to make a call for unpaid subscriptions to the

stock of said corporation," but no order of court was made calling for unpaid subscriptions "until the Fall of 1880;" wherefore said demand is barred by lapse of time, and by *laches* on the part of plaintiff. The seventh plea alleged unreasonable delay on the part of plaintiffs in the prosecution of the suit in Virginia, whereby no call was made on stockholders until after the lapse of nine years after the commencement of that suit. The eighth plea alleged that said subscription was made by defendants, if at all, more than twenty years before the bringing of this suit; that they have not, within twenty years before the bringing of this suit, recognized or acknowledged themselves or acted as stockholders, or subscribers to stock in said corporation; wherefore the defendants rely upon and claim the benefit of the prescription of twenty years. Issue was joined on the second special plea, and a demurrer was sustained as to each of the others.

On the trial, as the bill of exceptions shows, the plaintiff offered in evidence the subscription list, above set out, with certain books, records and papers of the said National Express and Transportation Company; and the court admitted each of them, against the objection and exceptions of the defendants. The objections to each part of this evidence were general, no particular ground of objection being specified. The plaintiff also offered in evidence a transcript, "duly authenticated under the act of Congress," of the record and proceedings in the cause decided in said court in Virginia, the material portions of which are above stated. The defendants objected to the admission of the record as evidence, "because it appeared on the face of said record that said court had never acquired jurisdiction of said corporation; that no process had ever been served on said corporation, as required by law, nor had said company ever appeared in court; that no decree *pro confesso* had ever been entered against said company; and that said record is not evidence against these defendants." The court overruled these objections, and admitted the transcript as evidence; and the defendants excepted. Certain statutes of Virginia were also read in evidence without objection, a printed copy of which was made an exhibit to the bill of exceptions. These statutes relate to private corporations, the service of process on them, the jurisdiction of the Chancery Court of Richmond, &c.

One of the plaintiff's counsel testified that, after said call for thirty per cent. was made by the court in Virginia, "he

[Lehman, Durr & Co. v. Glenn.]

called on defendants to collect it, and was referred by them to their counsel, to whom he submitted a copy of the record of said cause, as shown by said certified transcript; that said counsel informed him that he would advise defendants to pay; and that they then paid him said thirty per-cent. call. Defendants then asked said witness, if he showed their said counsel the original subscription list, before he gave his opinion; and the witness answered, that he could not say he did. The defendants thereupon moved the court to exclude from the jury the declarations of the counsel," and excepted to the overruling of their motion.

This being "substantially all the evidence," the court charged the jury, on request of the plaintiff, that they must find for him, if they believed the evidence. The defendants excepted to this charge, and they here assign it as error, together with the allowance of the amendment to the complaint, and the several rulings on the pleadings and evidence above stated.

Troy, Tompkins & London, for appellants.

Wm. S. Thorington, contra.*

SOMERVILLE, J.—This case is analogous, in its leading facts, to *Glenn v. Semple*, 80 Ala. 159; s. c., 60 Amer Rep. 92. Its merits may be disposed of by a few propositions abundantly supported by authorities precisely in point.

1. The decree of the Chancery Court of the City of Richmond, rendered on the fourteenth day of December, 1880, on a creditors' bill previously filed in December, 1871, against the National Express and Transportation Company and the trustees of that corporation, is not only admissible as evidence in this case against the defendants, as stockholders in said company, but is entitled to as full faith and credit in the courts of this State, as it would be in the courts of Virginia, where the corporation was located and had its principal office, and where the decree was rendered. If the court had jurisdiction of the subject-matter and of the parties, and the stockholders are to be regarded as parties to that suit for any purpose, this is the necessary legal effect of the decree under the Constitution and laws of the United States.

* The counsel of both parties in this case referred to their respective briefs in the case of *Semple v. Glenn*, which was submitted at the same time, but is yet under advisement on application for rehearing.

*Christmas v. Russell*, 5 Wall. 291; *Maxwell v. Stewart*, 22 *Ib.* 77.

2. The record in that case, which is made a part of the record before us, shows sufficiently that the court acquired jurisdiction of the corporation itself, by service of process on the proper officers. This service was on two of the directors, one of whom appeared and answered; and also on the cashier of the company, who also appeared and answered. The Virginia court decided, that this service was sufficient to give jurisdiction; and that decision is binding on us. It can not be collaterally attacked. If erroneous, it should have been corrected on direct appeal. The precise point was so decided in *Glenn v. Springs* (U. S. Cir. Ct.), 26 Fed. Rep. 494; and again in *Glenn v. Williams*, 60 Md. 93.

3. The same cases also hold, that the decree rendered against the corporation in that case, was conclusive against the stockholders, so far as it affects the condition and *status* of the corporate property, although they were not personally made parties to the proceeding by service of process on them. The rule in cases of this nature is, that the interest of the stockholder is represented by the presence of the corporation, for all the purposes of that suit. It was said in *Glenn v. Williams, supra:* "When the court obtained jurisdiction of the corporation, every stockholder, in his corporate capacity, was a party to the cause, and was supposed to be represented by the president and the directors, who were intrusted with the management of the corporate interest of all the stockholders." It was observed, further, that the stockholders being distributed among the several States, many of them being non-residents of Virginia, ordinary process of the courts of that State could not reach them; and if the court were required to make them parties personally, the creditors of the corporation would be without adequate remedy. The unpaid subscriptions of stock are assets of the corporation, being a trust fund for the payment of its debts; and "as against a creditor, with an established debt against the corporation, by judgment or decree, the stockholder has no right to withhold the funds of the company, upon the ground that he was not individually a party to the proceedings in which the recovery was obtained."—*Glenn v. Williams*, 60 Md. 116; *Hawkins v. Glenn*, 131 U. S. 319; *Sanger v. Upton*, 91 U. S. 56; *Great Western Tel. Co. v. Gray*, 122 Ill. 630; s. c., Amer. Law Reg., vol. 27, p. 160, and *note* 168; *Vanderwerker v. Glenn* (Sup. Ct. Va.), S. E. Rep. 806.

4. The decree of the Richmond court also conclusively determined the following points: *First*, that there was no *laches* on the part of the corporation, or its trustees, in the prosecution of that suit, or in obtaining the decree, which, as we have stated, was rendered on December 14th, 1880; *Secondly*, that the statute of limitations did not bar the claims of creditors up to that time; *Thirdly*, the authority of the court to make the call or assessment upon all who were stockholders in the company; *Fourthly*, the legal identity of the National Express Company, to which the subscriptions were originally made payable, and of the National Express & Transportation Company, to which its corporate name was changed; *Fifthly*, the right of the trustee, Glenn, to bring this suit.—*Glenn v. Springs*, 26 Fed. Rep. 494; *Glenn v. Soule*, 22 Fed. Rep. 417; *Glenn v. Williams*, 60 Md. 93; *Sanger v. Upton*, 91 U. S. 56; *Hall v. U. S. Ins. Co.*, 5 Gill, 484; *Glenn v. Semple*, 80 Ala. 159; s. c., 60 Amer. Rep. 92; *German Passenger Railway Co. v. Fitler*, 60 Penn. St. 124; s. c., 100 Amer. Dec. 546; *note*, p. 552; *Hawkins v. Glenn*, 131 U. S. 319.

5. The books of the corporation were admissible, as *prima facie* evidence of the correctness of the subscriptions, as to all whose names there appear as owners of stock, especially in view of the fact that the defendants in this case interpose no plea denying the genuineness of their original subscription, and are shown to have paid one assessment made on their stock by decree of the court in 1880, which was an admission by them of their *status* as stockholders. There is no presumption that these names have been fraudulently inserted on the corporate books by an act of forgery. *Turnbull v. Payson*, 95 U. S. 418; *Glenn v. Orr*, 96 N. C. 413; *Glenn v. Springs*, *supra; Railroad v. Applegate*, 21 West Va. 172; *Vanderwerker v. Glenn* (Sup. Ct. Va., 1888), S. E. R. 106; Cook on Stockholders, § 73; 1 Morawetz Corp. (2d Ed.), § 75.

6. That the demand here sued for was not barred by the statute of limitations, is conclusively settled in *Glenn v. Semple*, 80 Ala. 159; s. c., 60 Amer. Rep. 92. See, also, Wait on Insolvent Corp., § 631. We there held, that the statute did not commence to run in favor of stockholders until December 14th, 1880, when the Richmond Chancery Court ordered the assessment of unpaid stock subscription sued for in that action. The assessment here sued for was made on March 26th, 1886; and the suit was brought in November 19th of the same year.

[Morris v. Glenn ]

The questions here involved have a great many times come before the courts of this country for decision, and there has been a singular unanimity among them in the conclusions reached, all being in harmony with the views above announced. This is shown by the various cases above cited, in which the present appellee, Glenn, was party plaintiff.

The other assignments of error are not well taken, and the judgment of the Circuit Court is affirmed.

*Action by Trustee under appointment by Foreign Chancery Court, against Subscriber for Stock in Private Corporation.*

