# Semple v. Glenn.

*Action by Trustee under appointment of Foreign Chancery Court, against Subscriber for Stock in Corporation.*

1. *Statute of limitations in favor of stockholder, as against corporation or creditors.*—The court adheres to the rule declared in the former *Glenn Cases* (80 Ala. 159; 87 Ala. 618, 628, 631), and holds that, where the terms of subscription to a corporation bind the stockholders or

| 91 | 245 |
| 96 | 340 |

| 91 | 245 |
| 99 | 5 |

| 91 | 245 |
| 100 | 672 |

| 91 | 245 |
| 111 | 258 |

| 91 | 245 |
| 128 | 659 |

| 91 | 245 |
| 139 | 540 |

| 91 | 245 |
| 142 | 172 |

[Semple v. Glenn.]

subscribers to pay " in such installments as may be called for by said company," and the corporation, becoming embarrassed, executes a deed of assignment for the benefit of its creditors, not having called in all the stock subscribed, the statute of limitations in favor of a stockholder, as against a trustee appointed and authorized by a court of equity to collect the unpaid subscriptions, begins to run, not from the date of the assignment, but from the date of an assessment and call by the court.

2. *Amendment of complaint by adding common counts.*—The common counts can not be added to the complaint by amendment, when it affirmatively appears that they are intended to present a new and independent cause of action, different from that stated in the original complaint.

3. *Conclusiveness of foreign chancery decree.*—A decree rendered by a court of equity in Virginia, in a suit instituted by the creditors of an insolvent corporation, seeking to enforce and foreclose a deed of assignment for the benefit of creditors, though it may abound with errors and irregularities, is conclusive, in a subsequent suit against a stockholder in Alabama, as to the sufficiency of the service of process on the corporation, and a decree *pro confesso* entered against it ; but not as to the identity of two corporations, one as the successor of the other, when it appears that the creditors' suit related only to the latter, and the defendant claims to have subscribed only to the former.

4. *Identity of corporation, under changed name.*—When the defendant is sued on his alleged subscription to the capital stock of the " *National Express & Transportation Company,* under the name of the *National Express Company,*" and defends on the ground that he subscribed only to the company last named, the *onus* is on the plaintiff to show the legal identity of the two companies ; and the minutes of the meetings of the subscribers to the company of whom defendant was one, being properly identified, are admissible as evidence against him, for the purpose of showing that, in the incorporation of the second company, there was no material change or departure from the character and purposes of the corporation originally intended.

5. *Books of corporation, as evidence against stockholders.*—The proposition is upheld by the great weight of authority, though it may be difficult to maintain it on principle, that when a person's name appears on the books of a corporation as a stockholder, the presumption is that he is the owner of the stock, and the *onus* is on him to show that his name was not subscribed by himself, nor by his authority, express or implied ; and the books are admissible as evidence against him, though he denies the genuineness of his subscription by plea verified by affidavit.

6. *Prescription ; presumption of payment from lapse of time.*—A stockholder in a private corporation, or subscriber for stock, when sued for an unpaid balance due on his subscription, may plead prescription, or the presumption of payment arising from lapse of time ; and the defense is sustained by proof of the fact that more than twenty years have elapsed without any recognition by him of liability on his part.

7. *Assignment for benefit of creditors, by insolvent corporation ; subsequent calls for unpaid stock.*—When an insolvent corporation makes an assignment to trustees for the benefit of creditors, the trustees have authority to call in the unpaid subscription of stock, or may invoke the aid of court of equity for that purpose ; and on their default, the creditors may institute the necessary legal proceedings ; but the stockholders are not responsible for the default of either the trustees or the creditors, and they may plead prescription, or the presumption of payment from lapse of time.

8. *Decree against corporation ; conclusiveness against stockholders.* A decree rendered against a corporation, under a bill filed by cred-

[Semple v. Glenn.]

itors, seeking to enforce and foreclose a deed of assignment executed
for their benefit by the corporation, is conclusive on the stockholders
as to all corporate matters and property rights and interests, but
not as to questions of liability on their part to the corporation; and
when a stockholder, or subscriber for stock, is sued by the trustee
appointed under the decree, he is not precluded from showing (1) that
he never subscribed in fact, (2) that his subscription has been paid,
or (3) that the presumption of payment arises from lapse of time.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by John Glenn, suing as trustee
under appointment by the Chancery Court of Richmond, Vir-
ginia, against Henry C. Semple, as a stockholder in the Na-
tion Express & Transportation Company, a corporation char-
tered under the laws of Virginia, in December, 1865; was
commenced on the 19th November, 1886, and sought to en-
force the payment of fifty per cent. of defendant's alleged sub-
scription to the capital stock of said company, as assessed and
called for by a decree of said court rendered on the 26th
March, 1886. The original complaint contained three special
counts, each of which alleged that the defendant subscribed
for ten shares of stock in said corporation, "under the name
of the National Express Company." On the trial, the com-
mon counts were added by amendment, against the objection
and exception of the defendant. The defendant filed a special
plea, verified by affidavit, alleging "that he never subscribed,
nor was any subscription made for him by any one authorized
to bind him in the premises, for any stock in the National
Express & Transportation Company, under the name of the
National Express Company, or in any. other name or manner;
and he avers that the National Express Company was a sepa-
rate and distinct corporation from the National Express &
Transportation Company." Issue was joined on this plea,
and also on the plea of *non assumpsit.* Several special pleas
were also filed, setting up *laches,* lapse of time, and the statute
of limitations of six years; to each of which a demurrer was
sustained.

On the trial, as the bill of exceptions shows, the plaintiff
offered in evidence the original subscription list for stock in
the National Express Company, on which the defendant's name
appeared as a subscriber for ten shares of $100 each; and the
proceedings had at various meetings by subscribers to said stock,
showing, among other things, that they appointed a committee
to make application to the General Assembly of Virginia for
a charter with enlarged powers, and that a resolution was
adopted, at one of the meetings of the Executive Committee,
recommending "that the name of this association be changed

to the name of the National Express & Transportation Company." The defendant's name does not appear among those who attended any of these meetings, nor was it shown that he was present; and he reserved exceptions to the admission of the evidence.   The plaintiff offered in evidence, also, "the books and records of the National Express & Transportation Company," and they were admitted against the objection and exception of the defendant.   One of these books, called "Certificate Book," contained an entry stating that a certificate for ten shares of stock was issued on the 7th February, 1866, to "Henry C. Semple, of Alabama;" and beneath it was a receipt for the certificate, signed by *J. H. V. Allen*, and dated February 20th, 1866.   The defendant objected to the admission of this entry as evidence, "but the court overruled his objection, and permitted the entry to be read; to which the defendant excepted.   But the court instructed the jury, that this entry was not proof of the issue of a certificate for stock to the defendant, unless the evidence should show authority from him to Allen."   The plaintiff offered in evidence, also, certain statutes of Virginia, relating to the organization and proceedings of private corporations, the service of process on them, &c., and these were admitted without objection; also, a certified transcript of the bill, proceedings and decree in the said chancery suit in Virginia, which was admitted against the objections and exceptions of the defendant.   The proceedings shown by said certified transcript are stated fully in the case of *Lehman, Durr & Co. v. Glenn*, 87 Ala. 618.

The defendant testified in his own behalf, "substantially as follows :   That he signed the said subscription list offered in evidence, some time in the Fall of 1865, and had never seen the paper from that time until a short time before the commencement of this suit; that, to the best of his recollection, he had never made any payments thereon since that time; that he had no notice or knowledge of any of the proceedings in Richmond which were offered in evidence, nor did he ever know of the incorporation of the National Express & Transportation Company; that he had never attended, nor been notified of any meeting of this company; that he had never had any certificate of stock in the company, nor authorized any one to receive any certificate for him; that he had never attended any meeting of stockholders, nor authorized any one to represent him therein, or to put his name on the company's books."   The defendant then moved to "exclude the minutes and resolutions offered in evidence," and excepted to the overruling of his motion.

This being "substantially all the evidence," the court gave

[Semple v. Glenn.]

the following charges to the jury: (1.)` "The decree of the court in Virginia, and the deed of trust offered in evidence, conferred on plaintiff the right to maintain this action as trustee." (2.) "If the defendant subscribed for stock in an organization not then incorporated, and the incorporation was afterwards created under another name, and under a charter which gave different powers; if this was in contemplation, then the defendant would be bound by his subscription, notwithstanding the changes." (3.) "If the subscription was to the new corporation, then, if the jury are satisfied from the evidence that he subscribed to the new company, he would be liable, independently of his original subscription." (4.) "If the defendant's name appeared on the books of the National Express & Transportation Company, as a stockholder, this would create a *prima facie* liability against him, independently of the written subscription; and he would be liable as a stockholder, unless he had satisfactorily overcome this *prima facie* case."

The defendant excepted to each of these charges as given, and also to the refusal of several charges asked by him in writing, among which were the following: (3.) "If the jury are satisfied from the evidence that the defendant had no knowledge or information of the intended change of name of the corporation, and of the intention of the projectors of the corporation to procure the charter of December 12th, 1865, and had no information that said corporation was organized under said charter until 1880; then he is not bound by said change of name, nor to said corporation under said charter of December 12th, 1865." (4.) The paper writing offered in evidence, showing a subscription by the defendant to the National Express Company, is not evidence of a promise to pay the National Express & Transportation Company, if the jury believe that the National Express Company was not incorporated when said promise was made." (5.) "Although the jury may believe from the evidence that the defendant became a subscriber to the National Express Company, yet, if they believe that this company was not then incorporated, then the defendant would not be bound by any proceedings, resolutions or meetings of other persons, who were also subscribers to said company before it was incorporated, unless the plaintiff reasonably satisfies them that the defendant knew of, and assented to such proceedings, resolutions and meetings." (7.) "The defendant's written subscription to the National Express Company, if said company was not incorporated, would not create any liability against him as a subscriber to the National Express & Transportation Company, in the absence of proof

[Semple v. Glenn.]

of fraud, accident or mistake of the parties thereto." (11.) "The National Express Company, and the National Express & Transportation Company, are *prima facie* different corporations; and unless the latter company was incorporated at the time the defendant subscribed to the former, then the subscription would not create any liability against him as a subscriber to the latter company, unless it is shown that he afterwards consented to become a subscriber to said last named company." (12.) That the defendant's subscription, as shown by the writing itself, "would not create any liability on his part to the National Express & Transportation Company, unless the jury are reasonably satisfied that, by a promise express or implied, he has agreed to pay such subscription to said last named corporation; and the burden of showing this promise is on the plaintiff." The other charges asked and refused assailed the validity and conclusiveness of the chancery decree.

The assignments of error, 32 in number, embrace the allowance of the amendment to the complaint, the sustaining of the demurrers to the special pleas, the several rulings on evidence to which exceptions were reserved, the charges given, and the refusal of the several charges asked.

TROY, TOMPKINS & LONDON, for appellant, argued each of the assignments of error, but relied principally on the following points and authorities: (1.) The amendment presented a new cause of action, and was improperly allowed.—*Mahan v. Smitherman*, 71 Ala. 563. (2.) The subscription list offered in evidence was clearly variant from that declared on.—*Mosely v. Wilkinson*, 18 Ala. 288; *Hopper v. Eiland*, 21 Ala. 714; *Reed v. Scott*, 30 Ala. 640; *Railroad Co. v. Culver*, 75 Ala. 587; 1 Greenl. Ev. § 66. (3.) The record of the suit in the Chancery Court of Virginia was not competent evidence against the defendant in this suit. It does not show service of process on the corporation, nor that the person who was served was a director.—Field on Corporations, 382; *Oxford Iron Co. v. Spradley*, 42 Ala. 24; *Tall. Insurance Co. v. McCullough*, Ib. 667; *Cent. A. & M. Asso. v. Insurance Co.*, 70 Ala. 120. A decree *pro confesso* should show the facts upon which it is based.—*Hartley v. Bloodgood*, 16 Ala. 233; *Hanson v. Patterson*, 17 Ala. 738; *McDonald v. Patterson*, 66 Ala. 115; *Chilton v. Insurance Co.*, 74 Ala. 290. The decree would not be binding, except on service of process, or on appearance. *Gilchrist v. Va. Oil Co.*, 21 W. Va. 115; 99 U. S. 370; 1 Dan. Ch. Pr. 527; *Anderson v. Haddon*, 33 Hun, N. Y. 435. (4.) The proceedings of the meetings of subscribers in Rich-

[Semple v. Glenn.]

mond were not admissible in evidence against the defendant, (1) because it is not shown that he had any knowledge or notice thereof, (2) nor in fact that he had then subscribed to any corporation; and to admit these proceedings as evidence, would be to allow the corporation to make evidence for itself, and require the defendant to rebut it. (5.) Before the books of a corporation are competent to establish the fact that the defendant is a subscriber, or stockholder, it must be shown that his name is rightfully there.—Thompson on Stockholders, § 370; Mor. Corp. § 598; *Haynes v. Brown*, 36 N. H. 545; 3 B. & Ad. 142, or 5 E. C. L. R. 245. (6.) The only subscription made by the defendant was to a proposed corporation, not then formed, but intended to be organized under an old legislative charter in Virginia; which corporation was never formed, but, instead of it, a new corporation, with enlarged powers, and for different purposes. It is not shown that the defendant was present at any of these meetings, or had notice of them, nor that a majority of the original subscribers were present; and if it had been shown that a majority were present, the defendant was discharged by the radical change in the powers and purposes of the corporation.—Mor. Corp., §§ 314, 53–4; *Lanmon v. Railway Co.*, 30 Penn. St. 42; *Fry v. Railroad Co.*, 3 Metc. Ky. 314–22; Taylor, Corp., §§ 108–111; *Clearwater v. Meredith*, 1 Wall. 25; *Railroad Co. v. Harris*, 27 Miss. 540; 72 Amer. Dec. 685. (7.) If the defendant was ever bound by his subscription, yet this action is barred by the statute of limitations, and by *laches* on the part of the creditors, for whose benefit the suit is prosecuted. The corporation became insolvent, as alleged in the special pleas, and shown by the record of the chancery suit, and executed a deed of assignment for the benefit of its creditors on the 20th September, 1866. That deed conveyed to the trustees the unpaid subscriptions for stock, and took away from the corporation all further power over them. The trustees had power to call in the unpaid subscriptions, and the creditors might, by bill in equity, have compelled them to do so, or obtained a call by the court. The delay in this regard, whether attributable to the trustees or the creditors, can not be visited on the subscribers, or stockholders, and bars all remedy against them.—*Chamberlain v. Bromberg*, 83 Ala. 576; *Yeager v. Scranton Co.*, 14 Weekly Notes, Penn., 296; *Curry v. Woodward*, 53 Ala. 371; *Mardis v. Shackelford*, 4 Ala. 493; *Kimbro v. Waller*, 21 Ala. 376; 3 B. & Ald. 288; 32 Penn St. 22; 36 Mich. 487; Wood on Limitations, § 122. As to the pivotal period at which the personal liability of the stockholders of an insolvent corporation, as against creditors, begins, see *McDonnell v. Gold Life Insurance Co.*, 85 Ala. 401.

[Semple v. Glenn.]

Wm. S. Thorington, *contra.*—(1.) The amendment of the complaint was properly allowed.—*Zeigler & Hall v. David,* 23 Ala. 127; *Foster v. Napier,* 73 Ala. 595. (2. Each of the special pleas was based on the theory, that the statute of limitations commenced to run in favor of the stockholders, as against creditors of the corporation, from the date of the assignment to the trustees; a theory which has been repudiated by this court, and by other courts in similar cases.—*Glenn v. Semple,* 80 Ala. 161; *Glenn v. Williams,* 60 Md. 94–115. The corporation was organized for business purposes, and contemplated a long corporate existence. Subscriptions were payable only on call, or demand; and might never be called for, if the business prospered. The trustees had no power to make calls.—42 Iowa, 99. Until a call was made by the Chancery Court of Richmond, there was no liability on the stockholder, and the statute of limitations did not begin to run in his favor.—Cases above cited. (3.) The defendant's name appeared on the books of the corporation as a stockholder, and they were admissible as evidence against him.—*Payson v. Turnbull,* 5 Otto, 418; *Applegate v. Railroad Co.,* 21 W. Va. 172; *Glenn v. Springs,* 26 Fed. 494. (4.) The defendant's subscription to the National Express Company, before its corporate existence, is not denied. He was bound to take notice, at his peril, of all proceedings by the subscribers in furtherance of the project; and it is proved that notice was published in numerous newspapers. There was no radical change in the power and purposes of the corporation as organized, and the identity of the two corporations is conclusively established by the decree of the court in Virginia.—*Edinboro Academy v. Robinson,* 37 Penn. St. 213; *Music Hall Co. v. Carey,* 116 Mass. 471; *Davis v. Organ Co.,* 117 Mass. 456; 130 Mass. 328; 16 N. Y. 451; *Staunton v. Wilson,* 2 Hill, 153; 56 N. H. 548; 17 Ill. 58; 34 Md. 328; 5 Ala. 787. (5.) The defense of *laches* can not avail, (1) because it is an equitable defense, and (2) because, if there was any *laches,* it can not be attributed to the plaintiff. (6.) The defense of prescription, or presumption of payment from lapse of time, if presented on the record, is not sustained by the facts in evidence.

SOMERVILLE, J.—The principles settled in the case of *Lehman, Durr & Co. v. Glenn,* at the present term (87 Ala. 618), and in *Glenn v. Semple,* 80 Ala. 159; s. c., 60 Amer. Rep, 92, require an affirmance of the judgment in this case.

The only difference which distinguishes the case at bar from that of *Lehman, Durr & Co. v. Glenn, supra,* is, that here there has been no recognition by the appellant of his liability

[Semple v. Glenn.]

as subscriber for stock in the corporation represented by the plaintiff, from the time it was made in 1866 up to the time of bringing this suit in 1886, which is more than twenty years. It is insisted that, under the doctrine of prescription, this lapse of twenty years bars the claim, on the ground that the law will presume that the call for assessments was long since made and satisfied.—*Matthews v. McDade*, 72 Ala. 377; *Bozeman v. Bozeman*, 82 Ala. 389, and cases cited p. 391.

This view is fully met by the case above cited. We there held, that all stockholders in the corporation known as the National Express Company, or under its changed name of the National Express & Transportation Company, were to be considered as parties to the suit commenced by the creditors in the Chancery Court of the city of Richmond, in December, 1871, for all the legitimate purposes of that suit, in that the corporation itself was made a party by proper service on its officers, and that the interests of the stockholders were represented by the corporation of which they were members- The decree rendered on December 14th, 1880, in that suit, which was about six years before the prescription of twenty years would have been complete, was conclusive of the fact that there was no *laches*, or improper delay in making the call or assessment then ordered by the court, which that tribunal had full authority to make, and which was binding, *prima facie*, upon all whose names appeared upon the company's books as members and stockholders. It is equally conclusive of the fact that these assessments or calls had not presumptively been made before, nor satisfied by payment. The effect of the call under the decree was to rebut the presumption of payment, which might otherwise have arisen by reason of the lapse of twenty years from the date of the subscription, without any action looking to the enforcement of the stockholders' liability on these subscriptions. The assessment here sued for, which was made by the Richmond court on March 26th, 1886, was but a renewed assertion of the continued liability of stockholders for their unpaid subscriptions. The call was one which the officers of the corporation ought to have made. They were the agents of the stockholders, and the negligence of the agents may well be visited on their principals. The Chancery Court, in making the call, had the officers before them, and for this purpose, we repeat, they represented the stockholders, and had full authority to do so.—*Glenn v. Williams*, 60 Md. 116; *Sanger v. Upton*, 91 U. S. 56; *Great Western Tel. Co. v. Gray*, 122 Ill. 630; *Lehman v. Glenn, supra*; *Glenn v. Soule*, 22 Fed. Rep. 417.

When that decree was rendered, it necessarily adjudged that

[Semple v. Glenn.]

the assessment was not then barred by prescription, or *laches*, and until the assessment sued for was made on March 26th, 1886, no right of action existed, and prior thereto the statute of limitations did not commence to run in favor of the defendant.—*Glenn v. Semple*, 80 Ala. 159; s. c., 60 Amer. Rep. 92; Wait on Insol. Corp., § 631.

The judgment must be affirmed.

NOTE BY REPORTER.—The foregoing opinion was delivered on the 21st February, 1889, at the same time with the opinions in the other *Glenn Cases* (87 Ala. 618, 628, 631), but was withdrawn on application for rehearing, and the case was held under advisement until May 31, 1891, when the following opinion was delivered.

PETTUS & PETTUS, for appellant.—1. The court is asked to reconsider the doctrine of prescription, as presented by the facts of this case. In the opinion delivered, it is expressly decided against the appellant, as the main feature distinguishing this from the other cases; but it was not argued by counsel in the briefs submitted on the first hearing. "Here," as the opinion states, "there has been no recognition by the appellant of his liability as a subscriber for stock in the corporation represented by the plaintiff, from the time it was made in 1866, up to the time of bringing this suit in 1886, which is more than twenty years." With these facts admitted, the defense of prescription is complete, as established by the leading case of *McArthur v. Carrie*, 32 Ala 88, and adhered to without exception, or shadow of change, in all subsequent decisions; a defense against which neither infancy, nor coverture, nor war is an exception, and which is recognized by the Supreme Court of the United States, as the established rule of law in Alabama. *Phillippi v. Phillippi*, 115 U. S. 159; *McCartney v. Bone*, 40 Ala. 536; *Harrison v. Heflin*, 54 Ala. 563.

2. The court is asked to reconsider the decision as to the defense of the statute of limitations of six years, as announced in *Glenn v. Semple*, 80 Ala. 159, and modified by the facts shown by the record in this and the other late cases. The corporation became insolvent, and ceased to do business, on the 20th September, 1866, when it executed the deed of assignment to trustees for the benefit of its creditors, conveying to them, as part of its assets, the unpaid subscriptions of its stockholders. This assignment took away from the corporation all power to collect the unpaid subscriptions, and vested it in the trustees; and if the trustees failed to make proper or necessary calls, the creditors might have asked the compulsory process

of a court of equity. The personal liability of the stockholders, to creditors, began to run from the date of the assignment, and their unpaid subscriptions were payable on demand within a reasonable time.—*Curry v. Woodward*, 53 Ala. 371; *Glenn v. Dorsheimer*, 23 Fed. Rep. 695; *Hatch v. Dana*, 101 U. S. 205; and authorities cited in appellant's original brief, par. (7.) No demand, or call, was made until after the lapse of fourteen years, and no excuse is shown for the delay.

3. The appellant never subscribed for any stock in said insolvent corporation, and he denied the subscription shown by its books, by plea verified by affidavit; but he was denied the benefit of this plea, though supported by his own testimony on the trial, and in the absence of any testimony contradicting him. He subscribed only to the proposed National Express Company, before its incorporation; and if the National Express & Transportation Company was the legitimate successor of that proposed corporation, the substantial and material changes in its powers and business purposes discharged him from that subscription.—*Knox v. Childersburg Land Co.*, 86 Ala. 180; *Railroad Co. v. Crosswell*, 5 Hill, N. Y. 383; *Clearwater v. Meredith*, 1 Wall. 25; *Railroad Co. v. Allerton*, 18 Wall. 235; *Banit v. Railroad Co.*, 13 Ill. 510; 2 Dill. C. C. 435; Cook on Stock and Stockholders, § 500, note 1. In *Lehman, Durr & Co. v. Glenn*, now reported in 87 Ala. 618, it is said that the legal identity of the two corporations was conclusively determined by the decree of the Virginia Chancery Court; but an examination of the record of that case shows that the point was not decided, nor even presented; that the bill did not even aver such identity.

4. The most important question in the case, a reconsideration of which is asked, is as to the legal effect of the proceedings and decrees in the Chancery Court of Virginia, as announced in the case of *Lehman, Durr & Co. v. Glenn*, and applied by reference in the opinion delivered in this case. Under the provisions of the Federal Constitution, "full faith and credit shall be given in each State . . to the judicial proceedings of every other State;" and the construction placed on this provision by the Supreme Court of the United States is binding on the several State courts. But the decisions of that tribunal declare, that such judgment is only conclusive where the court had jurisdiction of the cause, of the subject-matter, and of the parties; that a defendant, when sued on it in another State, is not estopped from showing that the court had no jurisdiction of the subject-matter, or of himself personally, nor from setting up any personal defense which he might have pleaded if he had been before the court.—*Thomp-*

*son v. Whitman*, 18 Wall. 457; *D'Arcy v. Ketchum*, 11 How.
165; *Knowles v. Gas-Light Co.*, 19 Wall. 58; *Pennoyer v.
Neff*, 95 U. S. 714, 743.  See, also, as to the conclusiveness of
such judgments, *Kingsbury v. Yniestra*, 59 Ala. 320; *Star-
buck v. Murray*, 5 Wendell, 156; Cooley's Const. Lim., 405.

The record of the chancery suit in Virginia abounds in errors
and irregularities, which show an entire disregard of the prin-
ciples of chancery pleading and practice, on the part of the
complaining creditors, and great apathy and indifference on
the part of the adversary parties, if there were any.  But these
errors and irregularities go behind the judgment of affirmance,.
and are not now available.  The question remains, what did
the court decide? and, what could it lawfully decide?  The
bill was filed by creditors against an insolvent corporation;
and the court, having acquired jurisdiction over the corpora-
tion, could lawfully (1) ascertain the debts due from it to
creditors; (2) construe the deed of assignment made by the
corporation to the trustees; (3) remove them when they ap-
peared, and appoint another trustee in their place; (4) make
calls for the payment of unpaid subscriptions for stock, as the
corporation might have done before the assignment; and (5)
make distribution of all moneys collected for the corporation,
whether by a party to the suit, or by an officer or agent of the
court.  These were all matters within the scope and purpose
of the suit, and within the jurisdiction of the court; and as to
these matters the stockholders were represented by the corpo-
ration—there was no antagonism between them.  But the
court could not lawfully decide, and did not undertake to de-
cide, who were stockholders, or subscribers for stock; how
much they owed, if anything; or what personal defenses they
might have against any call or claim on the part of the corpo-
ration.  As to these matters, the corporation and the stock-
holders are adversary parties, and represent adversary rights,
so well defined that Federal jurisdiction may be invoked when
their citizenship is in different States.—18 How. 331.  As to
these matters, the corporation does not, and can not, represent
the stockholder; and to hold that a decree against the corpo-
ration can establish a personal liability against him as to these
matters, would deprive him of due process of law.—*Pennoyer
v. Neff*, 95 U. S. 733.

CLOPTON, J.—In *Glenn v. Semple*, 80 Ala. 159, two prop-
ositions were declared:  *First*, when the directors of a pri-
vate corporation, having authority, neglect or refuse to call in
unpaid subscriptions for stock, necessary to pay the claims of
creditors, a court of equity will take jurisdiction and make the

[Semple v. Glenn.]

requisite calls. *Second*, if by the terms of subscription the payments are to be made in installments as may be called by the company, the statute of limitations does not begin to run in favor of the subscriber until a call is made by the company, or by a court of competent jurisdiction. We are urged, on the application for a re-hearing, to consider the question as to the time when the statute of limitations begins to run. It may be that the ends of justice, and the wise policy of the statute, would have been more effectually subserved, had the rule been adhered to in these cases, that when a corporation abandons its charter, ceases to do business, and assigns all its effects, including the unpaid subscriptions for stock, to trustees for the benefit of creditors, so that calls can not be made in the mode prescribed by the contract of subscription, the debt for the unpaid stock is regarded, as between the trustees or creditors and the subscribers, as payable on demand without a formal call, and that such demand must be made in a reasonable time. This is the rule recognized in *Curry v. Woodward*, 53 Ala. 371; in *Hatch v. Dana*, 101 U. S. 205; in *Glenn v. Dorsheimer*, 23 Fed. Rep. 695; s. c., 24 Fed. Rep. 536; and in *Glenn v. Priest*, 28 Fed. Rep. 907. But, however this may be, the question, as to the time when the statute of limitations commences to run, has been subsequently decided by this court in *Lehman, Durr & Co. v. Glenn*, 87 Ala. 618, and other cases in the same volume; also by the courts of several of the States, and the Supreme Court of the United States, in suits by the same plaintiff, against stockholders of the same corporation, on the same call. There has been a *consensus* of opinion, maintaining the rule as declared in *Glenn v. Semple, supra*, and it should be regarded as settled, especially as between the parties to this suit. It would be unwise to disturb it now. We shall therefore confine the consideration to questions which did not arise, or were not decided in the other cases.

A preliminary question arises on the allowance of an amendment to the complaint. The cause of action presented by each count of the original complaint is an express contract of subscription for ten shares of stock made with the National Express & Transportation Company, under the name of the National Express Company. The amendment, which was made during the trial, introduces the common counts for money had and received, account stated, money paid, work and labor done, and goods and chattels sold; all of them, except the one for money had and received, being promises to plaintiff as trustee of the National Express & Transportation Company. Not only is there nothing in the record to authorize the presumption that the amendment was not intended to introduce

17

new causes of action, but a comparison shows that the common counts represent separate and distinct causes of action from that presented in each count of the original complaint. That the Circuit Court so understood the amendment, is manifest from the instruction to the jury, to the effect, that if defendant subscribed to the new company, he would be liable, independently of his original subscription; that is, of his express subscription under the name of the National Express Company. On the authority of *Mahan v. Smitherman*, 71 Ala. 563, we must hold that the amendment was improperly allowed, though unwilling to extend that decision beyond the facts of the case, or substantially the same facts.

. Appellee sues to recover a call of fifty per cent. of the par value of ten shares of the capital stock of the National Express & Transportation Company, ordered March 26, 1886, by the Chancery Court of the city of Richmond, Virginia, on a creditors' bill, seeking the construction and enforcement of a deed of trust, by which the corporation assigned all its property, rights, and credits, including the unpaid subscriptions for stock, to three named persons for the benefit of its creditors, and the marshalling and distribution of the corporate assets. The record and proceedings of the Chancery Court were admitted in evidence against the objection of defendant. The specific objection is, that the record fails to show service of process on the corporation, and a valid decree *pro confesso;* in other words, that the Chancery Court did not obtain jurisdiction of the corporation. The bill was filed, in December, 1871, against the corporation, some of its officers, and the ·trustees. It does not appear that any *subpœna* was issued against the corporation, until the day after an amended and supplemental bill was filed, August 4, 1879, when one was issued on the original, amended and supplemental bill. It was served on a director and the cashier of the company, both of whom appeared and answered; but neither having answered in the name of, or for the company, the bill was taken as confessed against the corporation. The question of the sufficiency and validity of the service of process was directly brought, by the petition of the stockholders, before the Circuit Court of Henrico county, to which the cause had been removed. By that court the service was adjudged to be valid, and that the corporation was before the court. The judgment of the Circuit Court denying the prayer of the petitioners, was affirmed by the Court of Appeals, which necessarily involved the validity of the service of process, though not passed on in terms.—*Hamilton v. Glenn*, 85 Va. 901. It may be that the record and proceedings abound in errors and irregu-

[Semple v. Glenn.]

larities, but the decrees are not void; and we are bound to accord to them the same faith and credit they have, by law and usage, in the courts of Virginia.

Printed copies of the proceedings of the meetings of the subscribers to the stock of the National Express Company were also admitted in evidence against the objection of defendant. It does not appear from the record that the identification or correctness of the copies, or that the minutes were made by any person authorized to make them, was shown. But, as no objection on this ground seems to have been made in the trial court, nor made here, we must assume that this ground of objection was waived. The complaint avers, that defendant subscribed for ten shares of the capital stock of the National Express & Transportation Company, under the name of the National Express Company; and plaintiff introduced in evidence a written subscription to the latter company, *eo nomine*, and claims that by virtue thereof defendant is a stockholder in the National Express & Transportation Company. It was therefore incumbent on plaintiff to show the legal identity of the two companies.

The statement in the opinion in *Lehman, Durr & Co. v. Glenn, supra,* that the legal identity of the companies was one of the points conclusively determined by the Richmond Chancery Court, does not seem to be sustained by the record. An examination shows that the identity of the two companies was not within the issues in the suit, nor was it decreed. That court was dealing with the National Express & Transportation Company as an original corporation, and only from the time of its organization; the preliminary proceedings, looking to incorporation, were not involved. By reference to the proceedings, it appears that, at a meeting of the citizens of Richmond, on September 18, 1865, it was proposed to organize a National Express Company, making the act of the legislature of Virginia, passed March 22, 1861, incorporating the Southern Express Company, the basis of the corporation; and as a larger capital would be necessary than that authorized by the act, and as other provisions, not contained therein, would be required, to apply to the legislature to grant the company a modified charter, adapted to its objects and the magnitude of its plans. On the 19th day of the same month, a committee was appointed to memorialize the General Assembly for the passage of an act increasing the capital stock, changing the corporate name, and for such other modifications as may be deemed necessary. On October 12, 1865, certain gentlemen were appointed to visit several named cities, among them the city of Montgomery, to receive subscriptions to the stock of

the company.   Defendant testified, that he subscribed in the Fall of 1865, which must have been after these meetings were held.   The National Express & Transportation Company was organized January 16, 1866, under the act of March 2, 1861, amended so as to change the name of the corporation, increase the capital stock, and authorize the company to do an express and general transportation business.

It is contended that the term, "National Express Company," does not import doing a general transportation business, and that the change of name, and the enlarged powers conferred, is a material departure from the character and purposes of the proposed corporation to which defendant subscribed ; in consequence of which, the subscription of defendant did not become a complete contract, and binding obligation.   The minutes of the meetings of the subscribers to the National Express Company, if identified or shown to be correct, or authoritatively made, are *prima facie* evidence of the preliminary proceedings for its incorporation, and are admissible for the purpose of showing that, in the incorporation of the National Express & Transportation Company, there is no material change or departure from the original character and purposes of the corporation intended to be formed.

The next objection is to the admission in evidence of the books of the corporation.   It may be difficult, on principle, or well recognized rules of evidence, to maintain the proposition, that when the name of an individual appears on the books of a corporation as a stockholder, the presumption is, that he is the owner of the stock, and casts on him, in a suit against him as a stockholder, the burden of rebutting the presumption, without showing that it was placed there by his authority, express or implied, or that he had any notice of his name appearing on the books ; but the proposition is upheld by the great weight of authority, and should now be regarded as placed beyond the pale of discussion.

More than twenty years elapsed from the organization of the corporation, and from the execution of the deed of trust, before the commencement of this suit; and there is no evidence of the recognition of his liability on the part of defendant, during this period, or anything to rebut the presumption of payment arising from the lapse of time, unless it be the call made by order of the court in December, 1880.   Being . doubtful whether this defense is sufficiently pleaded, we should probably decline its consideration, had it not been stated, in the former opinion in this case, as the feature which . distinguished it from the case of *Lehman, Durr & Co. v. Glenn, supra*; and then ruled, that the effect of the call of

[Semple v. Glenn.]

December, 1880, was to rebut the presumption of payment, which might otherwise have arisen by reason of the lapse of twenty years from the date of the subscription, without any action looking to the enforcement of the stockholder's liability.

This court has adhered with uniform tenacity to the doctrine of prescription, and has repeatedly held, that the lapse of twenty years, without recognition of right, or admission of liability, operates an absolute rule of repose. *McArthur v. Carrie*, 32 Ala. 88, is the leading case in this State. A slave had been illegally sold by an administrator, and possession held by the purchaser more than twenty years. During that time there was no one who could have sued, and the plaintiff instituted suit immediately after being appointed administrator. There was no statute of limitations applicable. After observing that a *prima facie* presumption is raised, whenever there is satisfactory proof of twenty years uninterrupted, adverse enjoyment and possession, STONE, J. says: "This *prima facie* case may, of course, be overturned. It can not be done by proving that the title was, in its inception, defective. Proof, to be effectual for this purpose, should be addressed to the character of defendant's possession, either in its *acquisition or use;* must tend to show that such possession is not inconsistent with the plaintiff's right, or some other cause, independent of the original defect of title, must be given for the seeming long acquiescence." It was further said, that in the absence of such excuse, the *prima facie* presumption becomes conclusive. The court has, not only never departed from the principles thus declared, but repeatedly approved and affirmed them. Hence it has been held, that a presumption of settlement, operating a positive bar to proceedings by a distributee to coerce a settlement, is created by the lapse of twenty years from the time a settlement of the administration and distribution of the assets could have been compelled in the Probate Court, without the administrator's recognition of the administration, within that period, as a continuing, subsisting, and undischarged trust.—*Harrison v. Heflin*, 54 Ala. 552; *Greenlee v. Greenlee*, 62 Ala. 330. Also, that twenty years adverse possession of land will bar an infant's right of entry, though the entire period of adverse holding was during his infancy. *Woodstock Iron Co. v. Roberts*, 87 Ala. 436. Also, if a mortgagee allows twenty years to elapse without taking any steps to compel the settlement of the mortgage, or to assert any rights of property under it, the presumption of payment or settlement arises.—*Goodwyn v. Baldwin*, 59 Ala. 127. And, though the statute of limitations has no application to express trusts—trusts exclusively of equitable cognizance—until there

is an open disavowal brought home to the beneficiary, if twenty years are allowed to elapse from the time a settlement could have been coerced, without commencement of proceedings, or recognition of the trust, the presumption of settlement operates a bar.—*McCarthy v. McCarthy*, 74 Ala. 546.

In *Phillippi v. Phillippi*, 115 U. S. 151, this was stated to be the settled doctrine in Alabama. Woods, J. says: "It is well settled by the decisions of the Supreme Court that, even in the absence of a statute of limitations, if twenty years are allowed to elapse from the time at which proceedings could have been instituted for the settlement of a trust, without the commencement of such proceedings, and there has been no recognition or admission, within that period, of the trust as continuing undischarged, a presumption of settlement would arise operating as a positive bar." This rule of repose "has been declared applicable to all kinds of debts and pecuniary obligations, including judgments, bonds and mortgages, embracing also fiduciary debts of every character due from trustees to *cestuis que trust*."—*Garrett v. Garrett*, 69 Ala. 429. It is impliedly recognized as applicable to the claim of plaintiff, in *Hawkins v. Glenn*, 131 U. S. 319, where it is said, "And here there was a deed of trust made by the debtor corporation for the benefit of its creditors, and it has been often ruled in Virginia, that the lien of such a trust deed is not barred by any period short of that sufficient to raise a presumption of payment." Also, *Hamilton v. Glenn, supra*, was a suit by the present plaintiff to collect the call of December, 1880. The decision, that the claim was not barred by the statute of limitations, is placed on the ground, that "the lien of the trust deed is not barred by any period short of that sufficient to raise a presumption of payment."

The evidence shows that a call was ordered by the Richmond Chancery Court in December, 1880, but the record does not disclose any evidence showing the institution of proceedings against defendant, to enforce its collection. Appellee insists, that the delay in making the call was owing to the failure of the officers of the corporation, who were the agents of the stockholders, and that the negligence of their agents may be well visited on them; that there has been no *laches*, or improper delay, on the part of the creditors. It was certainly the duty of the company to make the call as soon and whenever it was ascertained that payment of the subscriptions was necessary to meet the demands of creditors. But, when the deed of trust was executed, the trustees, who represented the creditors as well as the corporation, had authority to collect the subscriptions, and if a call by a court was deemed

[Semple v. Glenn.]

essential or proper, to institute proceedings for that purpose. In consequence of their failure to do so, the creditors' bill was filed in December, 1871. With the exception of service of process upon two of the individual defendants, no steps were taken, not even process to bring the corporation before the court, and the suit remained quiescent until August, 1879, when the amended and supplemental bill was filed ; and no call was made until December, 1880, nine years after the filing of the bill. Certainly, this long, and so far as the record shows, unexplained delay, can not be attributed to the stockholders or their agents.

It is further insisted, that the effect of a call by order of the court rebuts the presumption of payment arising from the lapse of time, on the ground that the stockholders were represented in that suit by the corporation, and. that the decree making the call is a judicial assertion of the liability of the stockholders binding them personally. The stockholders were represented by the corporation, so far as to render binding on them the decrees of the court in respect to corporate matters, and their property rights and interests in the corporation. The decrees of the Richmond Chancery Court may be regarded as having adjudged the fact and amount of the corporate indebtedness ; that the creditors were not barred from asserting their claims as against the corporation ; and that calls were necessary to meet their demands, which the court had authority to order, and did order. For these purposes the stockholders were not necessary parties ; and being represented by the corporation, the decrees, in the respects above stated, are binding on them ; but they can not legally operate to fix a personal liability on the stockholders, who were not made parties. Making a call by the court authorized the trustees to bring suits against the stockholders, or those claimed to be stockholders, in courts having jurisdiction over them personally. The suit in the Chancery Court is, in no sense, a suit against the individual stockholders. No decree was rendered adjudging who were stockholders, but merely the number of shares issued, and the places where held. No more binding effect ought to be given to a call made in such suit by the court, than would be given to a call made by the corporation itself, unless the individual stockholder is a party, and his personal liability determined. It will scarcely be contended, that had the corporation continued business, a call, though made within twenty years from the organization, would, without the commencement of proceedings for its enforcement, be efficient to rebut the presumption of payment. The legal effect of a decree in such suit is not to deprive the stockholder of, or

[Semple v. Glenn.]

impair, any personal defense he may have.   In a suit against him to collect the call, he may, notwithstanding the decrees, show that he is not a stockholder, though his name may appear on the books of the corporation, or that he has paid his subscription in full, or set up any other available personal defense. "Due process of law would require appearance, or personal service, before the defendant could be personally bound by any judgment rendered against him."—Cooley on Con. Lim. 499. As to claims of the corporation against a stockholder, for subscription to the capital stock, they are adversary parties; and as to such adverse interests, one can not represent the other.

The doctrine of prescription rests on principles different from the statute of limitations.   The presumption of payment is not countervailed by evidence of intervening infancy, coverture, or any disability of suit.   In *Harrison v. Heflin, supra,* speaking of the effect of the suspension of the statutes of limitation during the war, upon the presumption arising from the lapse of time, it is said: "This may acquit suitors of the imputation of *laches;* but the presumption rests, not only on want of diligence in asserting rights, but on the higher ground, that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more cruelty than justice in them; that it conduces to the peace of society, and the happiness of families, and relieves courts from the necessity of adjudicating rights so obscured by the lapse of time, and the accidents of life, that the attainment of truth and justice is next to impossible."

We can perceive no sufficient reason why claims of the nature of plaintiff's should be excepted from the operation of the rule, when no sufficient cause is shown for the long delay. On the foregoing well established principles in this State, nothing short of a recognition of right or admission of liability, or the institution of legal proceedings against the stockholder sought to be charged, within twenty years, will prevent the presumption of payment from becoming conclusive.

The foregoing principles will serve as a sufficient guide on another trial.

Reversed and remanded.